Tagged Opinion



**ORDERED in the Southern District of Florida on July 20, 2010.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                           CASE NO. 07-12963-BKC-LMI
                                                 (Jointly Administered)
ALL AMERICAN SEMICONDUCTOR,
INC.,                                            Chapter 11

            Debtor.
_____/

AASI CREDITOR LIQUIDATING TRUST,                 ADV. CASE NO. 09-1466-BKC-LMI
by and through Kenneth A. Welt, Liquidating
Trustee, pursuant to the confirmed Third
Amended Plan of Liquidation of The Official
Committee of Unsecured Creditors,

            Plaintiff,

vs.

PEOPLESOFT, USA, INC.; PEOPLESOFT,
INC.; ORACLE CORPORATION; CSS,
INC.; GLOBAL GROUP TECHNOLOGIES,
INC.; GLOBAL SYSTEMS
INTEGRATION, INC.; SOLARCOM, LLC;
CISCO, INC.; FORMSCAPE, INC;

PRECISION SOFTWARE, LTD.; VERTEX,
INC.; MICROSTRATEGY, INC; DATA
SYSTEMS INTERNATIONAL, INC.;
WINTHROP RESOURCES
CORPORATION; ENCORE LEASING
GROUP, LLC; SIEMEN FINANCIAL
SERVICES, INC.; RALPH M. REDDING;
INTERNATIONAL BUSINESS
MACHINES CORP.; SIRIUS COMPUTER
SOLUTIONS, INC.; CISCO SYSTEMS,
INC.

               Defendants.

_____/

### MEMORANDUM OPINION ON ORDERS GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS OR ABSTAIN FILED BY VARIOUS DEFENDANTS

On April 24, 2009, the Plaintiff, the AASI Creditors Liquidating Trust ("Plaintiff") filed

an Amended Complaint, Objection to Claims and Demand for Jury Trial[1] (the "Amended

Complaint") (DE #2) against nineteen defendants: PeopleSoft USA, Inc.; PeopleSoft, Inc.;

Oracle Corporation; CSS, Inc.; Global Group Technologies, Inc.; Global Systems Integration,

Inc.; Solarcom, LLC; Cisco, Inc.; FormScape, Inc; Precision Software, Ltd.; Vertex, Inc.;

MicroStrategy, Inc; Data Systems International, Inc.; Winthrop Resources Corporation; Encore

Leasing Group, LLC; Siemens Financial Services, Inc.; Ralph M. Redding; International

Business Machines Corp.; Sirius Computer Solutions, Inc.; and Cisco Systems, Inc.   The

Plaintiff was formed upon confirmation of the Offical [sic] Committee of Unsecured Creditors'

Third Amended Plan of Liquidation (the "Third Amended Plan") (DE #1173)[2] filed in

connection with the bankruptcy of All American Semiconductor, Inc. ("AASI") and thirty-three

---

[1] The Amended Complaint was filed the same day the Complaint was filed, presumably to correct scrivener's errors.
[2] Docket entry references to any plan, disclosure statement, schedules, or confirmation order are references to docket entries in the main bankruptcy case.

affiliated companies[3] (collectively, the "Debtors").   All of the Debtors were substantively consolidated and the Plaintiff was formed for the purpose of liquidating the Debtors' assets, including Litigation Claims (as defined in the Third Amended Plan), and ultimately distributing those assets to creditors.

Each of the defendants has been sued for its, or his, part in the alleged negligent design, installation and implementation of AASI's inventory management system, more formerly referred to as an Enterprise Resource Planning System (the "ERP System") the failure of which, according to the Debtors, was a material, if not the principal, cause of the Debtors' financial collapse.

The Plaintiff has voluntarily dismissed the Amended Complaint against six of the defendants - PeopleSoft, Inc., MicroStrategy, Inc., Oracle Corporation, International Business Machines Corp., Encore Leasing Group, LLC, and Siemens Financial Services, Inc., and has abated the action against three additional defendants – Solarcom, LLC, Cisco Systems, Inc. and Precision Software, Ltd.  Of the ten remaining defendants, eight have filed motions to dismiss, to

---

[3] All American Semiconductor, Inc., Case No. 07-12963-BKC-LMI; Access Micro Products, Inc., Case No. 07-12967; All American A.V.E.D., Inc., Case No. 07-12969; All American Added Value, Inc., Case No. 07-12970; All American Semiconductor of Atlanta, Inc., Case No. 07-12972; All American Semiconductor of Canada, Inc., Case No. 07-12998; All American Semiconductor of Chicago, Inc., Case No. 07-12973; All American Semiconductor of Florida, Inc., Case No. 07-12974; All American Semiconductor of Huntsville, Inc., Case No. 07-12976; All American Semiconductor of Massachusetts, Inc., Case No. 07-12977; All American Semiconductor of Michigan, Inc., Case No. 07-12978; All American Semiconductor of Minnesota, Inc., Case No. 07-12979; All American Semiconductor of New York, Inc., Case No. 07-12981; All American Semiconductor of Philadelphia, Inc., Case No. 07-12983; All American Semiconductor of Phoenix, Inc., Case No. 07-12984; All American Semiconductor of Portland, Inc., Case No. 07-12985; All American Semiconductor of Rockville, Inc., Case No. 07-12987; All American Semiconductor of Salt Lake, Inc., Case No. 07-12988; All American Semiconductor of Texas, Inc., Case No. 07-12989; All American Semiconductor-Northern California, Inc., Case No. 07-12993; All American Semiconductor of Washington, Inc., Case No. 07-12990; All American Technologies, Inc., Case No. 07-12995; All American Transistor of California, Inc., Case No. 07-12996; Aved Industries, Inc., Case No. 07-12966; Palm Electronics Manufacturing Corp, Case No. 07-12965; All American Semiconductor of Ohio, Inc., Case No. 07-12982; All American Semiconductor of Wisconsin, Inc., Case No. 07-12991; All American Semiconductor of Rhode Island, Inc., Case No. 07-12986; All American IDT, Inc., Case No. 07-12971; AGD China, Inc., Case No. 07-12997; AmeriCapital, LLC, Case No. 07-13002; AllAmMex Components, S. de R.L. de C.V., Case No. 07-13000; AGD Electronics Asia Pacific Co., Ltd., Case No. 07-13001; AGD Electronics Limited, Case No. 07-12999. The 34 bankruptcy cases are jointly administered under Case No. 07-12963.

abstain or to transfer.  This memorandum of law will address the legal issues common to each of these motions.[4] Separate orders will be entered with respect to each motion.

While I find well-founded all the motions to dismiss relating to the pleading requirements described by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), I nonetheless find it necessary and appropriate to address the other issues raised by the parties so that these issues need not be raised in the next go round.

## **ABSTENTION**

CSS, Inc. (DE #60 and #61), PeopleSoft USA, Inc. (DE #104 and #105), Redding (DE #140), Data Systems International ("DSI") (DE #143) and Global Systems Integration, Inc. ("GSI") (DE #85) each have filed a motion to abstain pursuant to the provisions of 28 U.S.C. §1334(c)(1)[5], notwithstanding that there are currently no pending state court actions relating to the disputes described in the Amended Complaint.

28 U.S.C. §1334(c)(1) provides that a bankruptcy court may abstain "from hearing a particular proceeding arising under title 11 or arising in or related to cases under title 11" when to do so would be "in the interest of justice, or in the interest of comity with State courts or respect for State law."

---

[4] I will not address the motion to dismiss filed by Winthrop Resources Corporation (DE # 99), the oral argument on which was postponed by agreement.  Presumably, whatever issues are not resolved in the second amended complaint I am directing the Plaintiff to file will be addressed in pleadings responsive to that second amended complaint.

[5] No party has suggested that the mandatory abstention provisions of 28 U.S.C. §1334(c)(2) apply and therefore, I need not address the issue of whether mandatory abstention is ever appropriate when there is no pending state court action.  *Compare Astropower Liquidating Trust v. Xantrex Technology, Inc. (In re Astropower Liquidating Trust, Inc.),* 335 B.R. 309 (Bankr. D. Del. 2005) *and E.S. Bankest, LLC v. United Beverage Florida, LLC (In re United Container, LLC)*, 284 B.R. 162 (Bankr. S.D. Fla. 2002) (a pending state law action is necessary) *with World Solar Corp. v. Steinbaum* (*In re World Solar Corp.*), 81 B.R. 603 (Bankr. S.D. Cal. 1988) (pending action is not necessary so long as the matter can be timely adjudicated).

4

Although there is no set "test" to determine under what circumstances discretionary abstention is appropriate, several courts, including this Court, have developed a list of factors a court should consider when making this decision.

(1)     The effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised;

(2)     The extent to which state law issues predominate over bankruptcy issues;

(3)     The difficulty or unsettled nature of the applicable state law;

(4)     The presence of related proceedings commenced in state court or other non-bankruptcy courts;

(5)     The jurisdictional basis, if any, other than § 1334;

(6)     The degree of relatedness or remoteness of the proceedings to the main bankruptcy case;

(7)     The substance rather than the form of an asserted "core" proceeding;

(8)     The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)     The burden on the bankruptcy court's docket;

(10)    The likelihood that the commencement of the proceedings in bankruptcy court involves forum shopping by one of the parties;

(11)    The existence of a right to jury trial;

(12)    The presence in the proceeding of non-debtor parties;

(13)    Comity; and

(14)    The possibility of prejudice to other parties in the action.

*E.S. Bankest, LLC v. United Beverage Florida, LLC (In re United Container LLC)*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002).   No particular factor is controlling and it is within the discretion of the court how much weight, if any, should be given to any particular factor.  *Id.*

*Accord In re Bankruptcy Petition Preparers who are not Certified Pursuant to Requirements of the Arizona Supreme Court*, 307 B.R. 134 (B.A.P. 9th Cir. 2004); *Valley Media, Inc. v. Toys R Us, Inc.*, 289 B.R. 27, 30 (Bankr. D. Del. 2003).

However,

> [a]bstention "is the exception to the rule that federal courts should hear and decide matters properly before them." . . . [a]bstention under § 1334(c)(1) is therefore typically reserved for matters in which difficult, uncertain issues of state law or those in which the state has a unique interest are presented, . . . the proceeding has been removed from state court and/or there is a parallel state court action pending, . . . the proceeding involves principally claims asserted by or against non-debtors, . . . or some other truly extraordinary aspect is present.

*West Coast Video Enters., Inc. v. Owens (In re West Coast Video Enters., Inc.)*, 145 B.R. 484, 488 (Bankr. E.D. Pa. 1992) (citations omitted).  One court has correctly observed that any factors considered by a court in determining whether to exercise its discretion to abstain is governed by the three statutory factors – the interest of justice, interest of comity with state courts, and respect for state law.  *Gradco Corp. v. Blankenship (In re Blankenship)*, 408 B.R. 854, 862 (Bankr. N.D. Ala. 2009).

Many of the factors summarized in the *United Container* case are present in this case and support my denial of the request of the parties to abstain.  The defendants argue, citing to various cases[6], that because the Third Amended Plan has been confirmed, and all that is involved is liquidation of assets, abstention will have little or no impact on the bankruptcy estate.  The Plaintiff, however, relies on Judge Walrath's finding in *Astropower Liquidating Trust v. Xantrex Technology, Inc. (In re Astropower Liquidating Trust)*, 335 B.R. 309, 330 (Bankr. D. Del. 2005), that the efficient administration of the estate is impacted where the litigation "is intrinsically connected to the Plan and its outcome could have a significant impact on recovery by creditors."

---

[6] Cases relied on include *Lawndale Steel Co. v. Fairlane Steel, Inc.* (*In re Lawndale Steel Co.*), 1991 WL 242977, *8 (Bankr. N.D. Ill. May 2, 1991) and *Taxel v. Commercebank* (*In re World Fin. Servs. Ctr.*), 64 B.R. 980 (Bankr. S. D. Cal. 1986).

I agree with Judge Walrath.[7] In this case, distributions to creditors will be funded almost entirely by litigation recoveries and the litigation over the ERP System is a significant, if not the most significant, potential litigation recovery. See Section VI.F. of the Disclosure Statement for Offical [sic] Committee of Unsecured Creditors' Second Amended Plan of Liquidation (DE #1053).[8]

Moreover, as the defendants have repeatedly emphasized, this litigation involves several defendants, with several contracts governed by different state laws.  However, the contracts all relate to the design, installation and implementation of the ERP System, which facts will have a part in the ultimate integrated ERP failure.  As the Plaintiff has argued, the bankruptcy court, or, after the reference is removed, if it is removed, the district court, can, on a more centralized basis, control the direction of the litigation and the timing, reducing the cost of, and possibly the time needed to ultimately resolve, this conflict.

While there is no question that virtually all of the litigation involves issues of state law, as already noted, the state law issues, when not neutral to this decision, actually weigh against abstaining.  While I note one lawyer's admonition that bankruptcy courts should "stick with what they know," bankruptcy courts regularly address issues of state law including laws from states other than that in which the court sits.  In the instant case, notwithstanding that different state laws may apply, a significant amount of material facts underlying the alleged liability of the various defendants are the same or are intertwined.  Thus, the logistical burden on the Liquidating Trust of litigating these matters separately greatly outweighs any burden on this

---

[7] Judge Walrath also found that this consideration impacts the sixth factor in favor of denying abstention.

[8] The plan that was circulated for balloting was the Offical [sic] Committee of Unsecured Creditors' Second Amended Plan of Liquidation (DE #1054).  However, at the confirmation hearing I determined there were potentially fatal flaws in the Second Amended Plan with respect to the treatment of certain administrative claimants. The confirmation hearing was continued to give the plan proponent the opportunity to correct the problems, which corrections were made in the Third Amended Plan, the plan that was confirmed.  I ruled that the Third Amended Plan did not require further disclosure or solicitation, and no changes in the Third Amended Plan have any bearing on plan provisions relating to this adversary proceeding or the issues addressed in this Memorandum Decision.

Court of having to apply different state laws to interrelated and sometimes similar, if not identical, facts. Moreover, none of the state laws that I would need to consider are either novel or unsettled. There being no novel or uncertain issues of state law, the prevalence of state law issues in this litigation is not persuasive to abstaining.

Finally, as noted, there are no pending state court actions with respect to any of these defendants. Courts generally do not permissively abstain from hearing a case unless there is a pending state action in favor of which the federal court should abstain. *See Security Farms v. Int'l Bhd. of Teamsters,* 124 F.3d 999, 1009 (9th Cir. 1997) ("Abstention can exist only where there is a parallel proceeding in state court."); *Eastport Assocs. v. City of Los Angeles* (*In re Eastport Assocs.*), 935 F.2d 1071, 1078-79 (9th Cir. 1991) (observing that if the bankruptcy court abstained, the debtor would have to start its litigation all over again since no state court action was pending); *Alvarez v. Johnson, Blakely, Pope, Bokor, Ruppel and Burns, P.A.* (*In re Alvarez*), 200 B.R. 259, 261 (Bankr. M.D. Fla. 1996) ("[B]oth the mandatory and optional abstention provisions were designed by Congress to apply to cases which are already filed and pending in a non-bankruptcy forum prior to the commencement of the case."). *But see Finova Capital Corp. v. Cote* (*In re Finova Capital Corp.*), 358 B.R. 113, 118 (Bankr. D. Del. 2006) (noting that the court may consider permissive abstention in the future if it "was clear" that a state court appeal would commence).

PeopleSoft also argues that some contracts contain jury trial waivers and others do not, meaning that, ultimately, many of these defendants may have to be bifurcated for trial. The Plaintiff has asked for a jury trial on all matters triable by a jury. The Plaintiff also argues that the non-core and core matters are intertwined. The Defendants do not disagree, arguing however that the core proceedings are derivative of the state law issues. I agree. Indeed this underscores

the inefficiency, if not the difficulty, of separating the core from the non-core claims, thereby making abstention inappropriate. *See Walker v. Bryans (In re Walker)*, 224 B.R. 239 (Bankr. M.D. Ga. 1998). To the extent any jury trial demands survive the pretrial process, bifurcation can be effectuated immediately prior to trial. Fed. R. Civ. P. 42(b) (as made applicable to these proceedings by Fed. R. Bankr. P. 7042); *see also Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001); *Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996).

Because there are no pending state court actions, because the common facts render litigation before a common court less of a burden, and because, to the extent bifurcation is necessary, bifurcation can occur immediately prior to trial, I find it is not appropriate to abstain from this case and, by separate orders, each of the motions to abstain will be denied.

## THE IMPACT OF A CONFIRMED BANKRUPTCY PLAN ON VENUE AND ARBITRATION PROVISIONS

PeopleSoft and Sirius argue that I should abstain or transfer the cases against them to the venues provided for in their respective contracts with the Debtors. Sirius further argues that I must abstain or dismiss the Amended Complaint against it because its contract with the Debtors has a mandatory arbitration provision. The Plaintiff counters that the venue and arbitration provisions of the Third Amended Plan, which vest exclusive jurisdiction over this litigation and venue of these proceedings in the bankruptcy court supersede and modify these contract provisions.

The Third Amended Plan was confirmed on April 10, 2009. The Third Amended Plan provides in Article XIII:

> [T]he Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or

> related to, the Chapter 11 Cases to the full extent permitted by applicable law,[9] including, without limitation, jurisdiction to:
>
> 1.      determine all controversies and disputes arising under or in connection with the Plan and the Consolidated Estate, . . . including but not limited to, all Litigation Claims brought by the Liquidating Trustee.

"Litigation Claims" in turn are described, in part, in the Second Revised and Restated Schedule I.A.65 (the "Revised Schedule") which includes in its many pages, claims against each of the named defendants in this adversary proceeding arising from, and in connection with, the design, planning, programming, commissioning, operation, maintenance support or servicing of the ERP System. The provisions of the Third Amended Plan are unambiguous – the bankruptcy court has <u>exclusive</u> jurisdiction of any litigation relating to the ERP System.

Article XIII also provides – "[f]or all Causes of Action as to which the Bankruptcy Court shall retain jurisdiction above, venue shall be appropriate in and before the Bankruptcy Court." In other words, for all matters over which, pursuant to the Third Amended Plan, the Bankruptcy Court has jurisdiction, venue in the same court is appropriate.

A chapter 11 plan is a contract that binds both debtors and creditors. *United States v. Lincoln Savings Bank* (*In re Commercial Millwright Service Corp.*), 245 B.R. 585, 590 (Bankr. N.D. Iowa 1998). "Upon confirmation of the plan, all prior obligations and rights of the parties are extinguished and replaced by the plan." *Id.* Courts have described the plan as a novation of pre-petition obligations. *See In re Jankins*, 184 B.R. 488, 494 (Bankr. E.D. Va. 1995). The Plaintiff argues that the arbitration provisions of the contract with Sirius,[10] and the forum selection provisions of the contracts with PeopleSoft and Sirius, have been superseded by the jurisdiction

---

[9] No defendant has argued I lack jurisdiction under 28 U.S.C. §1334 to hear this adversary proceeding. Sirius argues that I lack jurisdiction because of the arbitration provision but I find its reasoning circular at best.
[10] The Plaintiff originally included GSI and DSI in this category but for the reasons discussed *infra* the Plaintiff receded from that position in oral argument.

and venue provisions of the Third Amended Plan.  Plaintiff also argues that PeopleSoft and Sirius waived the venue and arbitration provisions of their contracts when they filed proofs of claim.

The Bankruptcy Code clearly delineates the parties bound by a confirmed Chapter 11 Plan.  11 U.S.C. §1141(a) provides:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

"[The] Bankruptcy Court has the authority to modify the contractual relationships of the bankruptcy debtor and his *creditors*.  However, a bankruptcy debtor may not use the Bankruptcy Court to modify contractual relationships with *his debtor* or other parties not included within 11 U.S.C. § 1141."  *English v. Valero Hydrocarbons Co.* (*In re Northwest Exploration Co.*), 71 B.R. 873, 877 (Bankr. N.D. Okla. 1987) (emphasis in original).  A chapter 11 plan that purports to modify the contractual relationships of parties outside the scope of section 1141 of the Bankruptcy Code is "fatally flawed for the purposes of confirmation."  *In re Real Pro Financial Servs., Inc.*, 120 B.R. 216, 218 (Bankr. M.D. Fla. 1990).

In general, forum selection provisions in contracts are given great deference, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), even in bankruptcy adversary proceedings, *Manchester, Inc. v. Lyle (In re Manchester, Inc.),* 417 B.R. 377 (Bankr. N.D. Tex. 2009). However, venue provisions can be waived.  *See American Freight Sys., Inc. v. Blymyer Engineers, Inc.* (*In re American Freight Sys., Inc.),* 236 B.R. 47 (Bankr. D. Kan. 1999); *accord,*

*Nat'l Bank of North America v. Assocs. of Obstetrics and Female Surgery, Inc.*, 425 U.S. 460 (1976).

Similarly, courts, including bankruptcy courts, give tremendous deference to arbitration provisions.  Indeed, a bankruptcy court must enforce an arbitration agreement relating to a non-core proceeding.  *The Whiting-Turner Contracting Co., United States Fid. and Guar. Co. v. Elec. Machinery Enters., Inc., (In re Elec. Machinery Enters., Inc.),* 479 F.3d 791, 796 (11th Cir. 2007); *accord Astropower Liquidating Trust,* 335 B.R. at 326*; Charter Behavioral Health Sys., LLC v. Managed Health Network, Inc.* (*In re Charter Behavioral Health Care Sys., LLC*), 277 B.R. 54 (Bankr. Del. 2002).  Even for a core proceeding, a bankruptcy court must determine "whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code."  *Electric Machinery Enters.*, 479 F.3d at 796.

However, venue provisions, like arbitration provisions, can be waived.  *Ivax Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309 (11th Cir. 2002); *S&H Contractors, Inc. v. A.J. Taft Coal Co.,* 906 F.2d 1507 (11th Cir. 1990). To determine

> whether a party has waived its right to arbitrate, we have established a two-part test.  First, we decide if 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right,' and, second, we look to see whether, by doing so, that party 'has in some way prejudiced the other party.'

*Ivax Corp.*, 286 F.3d at 1315-1316 (*quoting S&H Contractors,* 906 F.2d at 1511).

Both Sirius and PeopleSoft dispute that their filing of a proof of claim constituted a waiver of the venue or arbitration provisions of their respective contracts.  While PeopleSoft did cite to a case, *Martin v. CitiFinancial, Inc.* (*In re Martin*), 387 B.R. 307 (Bankr. S.D. Ga. 2007), that held the filing of a proof of claim was not in itself a waiver of a lender's forum selection rights, this case seems anomalous in light of the undisputed rule that filing a proof of claim constitutes a voluntary submission to the equity jurisdiction of the bankruptcy court.  *See*

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 57-58 (*citing Katchen v. Landy*, 382 U.S. 323,

336 (1966)).  However, I do agree that the filing of a proof of claim would not necessarily submit

a creditor to the jurisdiction of the bankruptcy court for matters unrelated to the proof of claim.[11]

In this instance, PeopleSoft's proof of claim arises solely from the contract that is the subject of

this adversary proceeding.

Interestingly, notwithstanding the clear law that filing a proof of claim constitutes a

submission to the jurisdiction of the bankruptcy court (including waiver of any jury trial right),

the majority of courts have held that the mere filing of a proof of claim does not constitute

waiver of any contractual arbitration provision.  *See generally* Michael D. Fielding, *Elevating*

*Business Above the Constitution: Arbitration and Bankruptcy Proofs of Claim*, 16 Am.

Bankr. Inst. L. Rev. 563 (2008).   I do not need to resolve here whether and to what extent the

choice by Sirius and PeopleSoft to file proofs of claim constituted a waiver of their contractual

venue and arbitration provisions because I find their failure to contest the venue and exclusive

jurisdiction provisions of the Third Amended Plan did constitute a waiver of those provisions.

Schedule I.A.65 (the "First Schedule") was first filed on January 16, 2009 (DE #1052-2)

as an exhibit to the Second Amended Plan of Liquidation filed January 16, 2009 (DE #1052).

The First Schedule I.A.65 was subsequently amended on March 6, 2009 (DE #1104).  The

Second Amended Plan of Liquidation is the plan that was circulated to all creditors for balloting

and objection.  The venue and jurisdiction provisions of the Second Amended Plan and Third

Amended Plan are identical, as is the definition of Litigation Claims.  The First Schedule I.A.65

describes the ERP litigation (although not in the same detail as the Revised Schedule) but does

---

[11] A creditor might also argue that the creditor may have submitted itself to the jurisdiction of the bankruptcy court
by filing a proof of claim but not to venue in the district where the debtor's bankruptcy case is pending.  This point
was not directly argued by PeopleSoft; moreover, I do not need to reach a decision on this issue as I find PeopleSoft
waived any objection to the venue provision by failing to object to the Third Amended Plan.

not list IBM or Sirius as potential defendants.  However, both the First Schedule and the Revised Schedule contain a sentence "[a]ny other parties that may be identified upon further investigation." Ballots were mailed on or about February 6, 2009 to all creditors and the deadline to object to confirmation was March 9, 2009.

There is no question that PeopleSoft had notice that the liquidating trustee would likely pursue claims against it with respect to the ERP System fiasco.  There is also no question that, although PeopleSoft received the solicitation package, including the order setting deadline to file objections to confirmation, PeopleSoft did not file an objection to the Second Amended Plan.

Sirius argues that it should not be deemed to have consented to modification of, or waived, its contractual venue and arbitration rights because it was not listed in the First Schedule I.A.65, a copy of which it did receive, but, rather, was only named in the Revised Schedule I.A.65 which Sirius claims it did not receive.[12]  However, whether or not Sirius was named as a known target in the First Schedule I.A.65 does not change the fact that a) the Second Amended Plan stated ALL litigation to be brought by the Liquidating Trustee would be subject to the exclusive jurisdiction of the bankruptcy court; b) the ERP litigation claims were generally described in the First Schedule with a provision stating additional defendants were being identified, and that a Revised Schedule I.A. 65 would be filed not later than 10 days before the Confirmation Hearing, and c) the ERP failure was described in the Disclosure Statement as the primary cause of the Debtors' demise.  Thus, the fact that Sirius was not initially named in the First Schedule I.A.65 does not mean it was not on notice that the Liquidating Trust was going to be filing litigation against everyone involved in the design, installation and implementation of the ERP System, and that a Revised Schedule would be filed before the confirmation hearing.

---

[12] Sirius correctly states that the certificate of service does not show it was served with the Revised Schedule I.A.65. However, Sirius did receive the initial package, knew a final schedule would be released, and if Sirius chose not to review the final schedule, whether or not served on Sirius, it did so at its own peril.

Sirius has not attempted to argue it was not involved in some aspect of the ERP System design, installation and implementation.[13] Accordingly, I find that, to the extent the *Mullane* criteria applies to these circumstances, Sirius received notice "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

In support of its position that Sirius waived its right to arbitration by failing to object to the Second Amended Plan, the Plaintiff relies on *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753 (7th Cir. 2002). In the *Ernst & Young* case, the court held that Ernst & Young waived its right to arbitration of a dispute when it failed to object to a plan that provided for adjudication of all pending adversary proceedings before the bankruptcy court. At the time of plan confirmation Ernst & Young was a named defendant in an adversary proceeding. In holding that the bankruptcy court properly found that Ernst & Young waived its right to arbitrate, the circuit court noted that Ernst & Young had participated in the plan confirmation process by objecting to plan language that sought to limit Ernst & Young's right to bring an action or assert a defense against the debtor's principal shareholder and his wife. The circuit court held that Ernst & Young's objection to one plan provision regarding its litigation rights and not another constituted a waiver of its contractual arbitration rights.

> Courts must examine the totality of the circumstances and 'determine whether based on all the circumstances, the [party against whom the waiver is to be enforced] has acted inconsistently with the right to arbitrate' . . . Although several factors may be considered in determining waiver, diligence or the lack thereof should weigh heavily in the decision – 'did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?'

---

[13] Sirius, according to the Amended Complaint, was responsible for the service, consulting and maintenance of the ERP System.

*Id.* at 756 (internal citations and emphasis omitted).

Sirius seeks to distinguish *Ernst & Young* arguing that in *Ernst & Young* the adversary proceeding was pending at the time of confirmation and that Ernst & Young had actual knowledge that the debtor intended to continue the lawsuit post confirmation.  However, as I have already noted, Sirius knew the Liquidating Trust was going to be filing several lawsuits relating to the ERP System, Sirius knew the plan proponent intended to name additional potential defendants before confirmation, and, due to its involvement in the ERP System project, Sirius had to know it was a potential target. That Sirius, apparently, chose not to review those pre-confirmation schedules was not reasonable under the circumstances.

Thus, in general, the venue and jurisdiction provisions of a confirmed plan will be binding on a creditor and supersede or modify the provisions of any contract between the creditor and the debtor, including arbitration and venue provisions.  Conversely, those defendants who are not creditors and did not have an opportunity to object to confirmation are not bound by the terms of a confirmed plan.

Although Peoplesoft and Sirius are both creditors, they each argue the venue provisions of their respective contracts, and in the case of Sirius, the arbitration provision, cannot be modified because their contracts were rejected, and once rejected, the contract cannot then be modified.  11 U.S.C. §365 authorizes the trustee to assume or reject executory contracts and unexpired leases.  A debtor must either assume an executory contract in its entirety or completely reject it.  *See Byrd v. Gardinier* (*In re Gardinier, Inc.*), 831 F.2d 974, 975 n.1 (11th Cir. 1987). 11 U.S.C. §365(g) provides that rejection of a contract or lease that has not previously been assumed constitutes a breach immediately before the filing of the bankruptcy petition.  Because the rejection of a contract constitutes a breach, rejection does not terminate the contract in its

entirety, but rather, "frees the estate from the obligation to perform" its duties under the contract. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007).

> [R]ejection 'does not embody the contract–vaporizing properties so commonly ascribed to it . . . Rejection merely frees the estate from the obligation to perform; it does not make the contract disappear' . . . '[r]ejection has absolutely no effect upon the contract's continued existence; the contract is not cancelled, repudiated, rescinded, or in any other fashion terminated.'

*Id.* at 1306 (*quoting Cohen v. Drexel Burnham Lambert Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc.*), 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992) (citations omitted)).

Consequently, a "debtor's liabilities under a contract or lease remain 'intact to form the basis of a claim' against the bankruptcy estate." *In re Old Carco LLC*, 424 B.R. 633, 639 (Bankr. S.D.N.Y. 2010) (*quoting* Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding 'Rejection*,' 59 U. Colo. L.Rev. 845, 888 (1988)), and conversely, provides a framework for any claim the bankruptcy estate may have against the other contract parties.

While it is true that a specific provision in an executory contract cannot be held enforceable if the contract as a whole has been rejected, *see, e.g.*, *In re Transamerican Natural Gas Corp.*, 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987) (concluding that enforcing a liquidated damages provision in a rejected contract would essentially be the same as enforcing the executory contract), forum selection clauses and arbitration provisions address the procedural framework pursuant to which a contract dispute will be processed, rather than the substantive provisions that create and define the legal relationships between the parties. To argue that a party cannot modify or waive a forum selection provision for a contract that has been breached

would render absurd any venue waiver case since presumably, litigation over a contract, whether terminated, completed, rejected or ongoing, only occurs when there has been a breach.[14]

As already noted, PeopleSoft and Sirius each had the opportunity to object to confirmation and raise the issue of the exclusive jurisdiction and venue provisions of the Second Amended Plan.  Since they failed to object and the Third Amended Plan was confirmed, the venue and jurisdiction provisions of the Third Amended Plan superseded the venue provisions in the PeopleSoft and Sirius contracts and the Sirius arbitration provisions, as each has waived its rights by failing to object.  *Accord Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753.

Accordingly, I find that, while a rejected contract cannot be modified, the venue and arbitration provisions for litigation arising with respect to that contract may be waived, including by virtue of being superseded by the provisions of a confirmed plan to which no objection is raised.

### Impact on DSI and GSI

DSI and GSI argue, and the Plaintiff agrees, that because neither DSI nor GSI was a creditor, the litigation with them must be arbitrated in accordance with their respective contract provisions.  The Plaintiff has requested that the adversary proceeding with respect to these two defendants be stayed rather than dismissed pending arbitration.  DSI and GSI have agreed to stay as an alternative to dismissal; accordingly, by separate orders all matters in this adversary proceeding subject to the DSI and GSI arbitration provisions are stayed and abated, pending further order of this Court.

---

[14] Indeed Sirius recognizes this distinction in its own pleadings citing to cases that hold that even when a contract is rejected or breached the parties may be compelled to arbitrate.  *See, e.g.*, *Madison Foods, Inc. v. Fleming Companies, Inc.* (*In re Fleming Companies Inc.*)*, 325 B.R. 687 (Bankr. D. Del. 2005).

## THE MOTIONS TO DISMISS

Defendants Global Group Technologies, Redding by joinder, and PeopleSoft each argue that the Amended Complaint must be dismissed for failing to meet the pleading standards of Fed. R. Civ. P. 8 and 9 and of Rule 12 as outlined by the United States Supreme Court in *Twombley* and *Ashcroft*.

Federal Rule of Civil Procedure 12(b)(6), as made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b), provides a mechanism by which a party may seek to dismiss a complaint for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss, a plaintiff must allege more than "labels and conclusions," or simply recite the elements of a cause of action.  *Twombly*, 550 U.S. at 555.  The complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Iqbal*, 129 S.Ct. at 1949.  A claim is considered factually plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Failure to state a claim for relief is a purely legal question.  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1270 n.19 (11th Cir. 2009).

Rule 8 of the Federal Rules of Civil Procedure requires the plaintiff to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Rule reflects a liberal notice pleading structure, "which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (*quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).  Despite the pleading modifications articulated in *Twombly* and *Iqbal*, the courts have not abandoned the notice pleading standard.  *Id.* at 581 ("We understand the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the

claims that they are pleading . . . rather than providing some specific facts to ground those legal claims, that they must do more.").

The parties complain primarily of undifferentiated allegations that lump all the defendants together.  The provisions of the Amended Complaint common to each of the defendants relate to group references to liability and breach.  An example of this group pleading is paragraph 95 contained in Count I of the Amended Complaint which states "[i]ndividually and collectively, Defendants breached their contracts and agreements by failing to deliver either the service or the products agreed upon among the parties."  However, there is no description of how each defendant allegedly breached their respective contract.  Something more precise than "the system utterly failed" is needed to meet the notice requirements of Fed. R. Civ. P. 8.[15]

Another common complaint is that the Plaintiff is not entitled to a count for unjust enrichment because in each case the defendant had an express contract; I agree.  While I understand the Plaintiff has the right to plead in the alternative, *see Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006)[16], that is not the case when the facts do not support the alternative relief.  *Accord McCloud v. Fortune*, 2005 WL 3274648, at *6 (N.D. Fla. Dec. 2, 2005).  Nowhere in the Amended Complaint does the Plaintiff suggest that none of the parties had an express contract.  At a minimum, when the Plaintiff files its second amended complaint, more precise grounds outlining the basis for a potential claim for unjust enrichment, something more than "just in case," will be required.  Of course, should any defendant raise a defense that there is no valid contract, I will allow the Plaintiff to add a count for unjust enrichment.

---

[15] There are some more precise allegations for some of the defendants (e.g., paragraph 51 where the Plaintiff alleges one CSS employee acknowledged being "in over [his] head"), but even those sparse, albeit more precise, allegations are not adequately tied to the contract to which the alleged breach relates.

[16] The *Wagner* Court referred to Federal Rule of Civil Procedure 8(e), which has since been amended.  The relevant language relating to alternative pleading is now set forth in Rule 8(d)(2).

The other 12(b)(6) issues raised by PeopleSoft, including the issues relating to notice and warranty claims, I will address, if necessary, after the Plaintiff has filed its second amended complaint.  I will remind the Plaintiff, however, that the PeopleSoft contract is governed by California law and other contracts are governed by other states' laws, and therefore the substance and adequacy of its allegations in the second amended complaint with respect to contract issues will be judged under the law applicable to that particular contract.

### **Redding Improper Joinder Claim**

Redding's Motion to Dismiss and Abstain raises improper joinder as one ground for dismissal.  However, Redding acknowledges in his motion that the misjoinder issues may be resolved if the pleading deficiencies are corrected in an amended complaint.  Because, as I previously stated, I will be directing and authorizing the Plaintiff to file a second amended complaint, I will deny Redding's Motion to Dismiss without prejudice and a separate order will be entered.

### **CONCLUSION**

Accordingly, the Plaintiff will file its second amended complaint no later than July 28, 2010.  The Defendants shall have twenty-eight days from the filing of the second amended complaint to file any response pleadings.  Separate orders will be entered on each pleading.

###

Copies furnished to:
Scott Underwood, Esq.

*Attorney Underwood shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*