Tagged Opinion



**ORDERED in the Southern District of Florida on January 24, 2013.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| In re: | CASE NO. 07-12963-BKC-LMI |
|  | (Jointly Administered) |
| ALL AMERICAN SEMICONDUCTOR, INC., | Chapter 11 |
| Debtor. | |
| _____/ | |
| AASI CREDITOR LIQUIDATING TRUST, by and through Kenneth A. Welt, Liquidating Trustee, pursuant to the confirmed Third Amended Plan of Liquidation of The Official Committee of Unsecured Creditors, | ADV. CASE NO. 09-1466-BKC-LMI |
| Plaintiff, | |
| vs. | |
| ORACLE USA, INC. *et al*. | |
| Defendants. | |
| _____/ | |

**MEMORANDUM OPINION ON DEFENDANTS' MOTIONS TO DISMISS**

This matter came before me on July 11, 2012, on motions to dismiss the Second Amended Complaint filed by four of the named defendants.[1] The Plaintiff, the AASI Creditors Liquidating Trust by and through its Liquidating Trustee ("Plaintiff"), initiated this adversary proceeding on April 24, 2009 with its first Complaint, as amended (ECF #2) (the "First Amended Complaint"). I previously granted in part and denied in part various motions to dismiss and to abstain (ECF #280).[2]

The Plaintiff filed his Second Amended Complaint on July 28, 2010 (ECF #302) (the "Complaint"). The Plaintiff has settled with, or dismissed from the Complaint, many of the defendants. Each of Oracle USA, Inc. (f/k/a PeopleSoft USA, Inc.) ("Oracle"), CSS, Inc. (a/k/a CSS International, Inc.) ("CSS"); Global Group Technologies, Inc. ("GGT") and Global Systems Integration, Inc. ("GSI") (together the "Defendants"),[3] have all filed motions to dismiss the Plaintiff's Complaint (the "Motions to Dismiss").[4] The Plaintiff in turn has responded to the motions to dismiss in an omnibus response (ECF #477) (the "Omnibus Response") and the

---

[1] Motion of CSS, Inc. to Dismiss Counts XXI, XXV, XLVII, and LIV of Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 9(b)(ECF #363); Supplement to Motion of CSS, Inc. to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF #463); Defendant Global Group Technologies, Inc.'s Motion to Dismiss the Second Amended Complaint (ECF #364); Defendant Global Group Technologies, Inc.'s Notice of Filing (ECF #462), Defendant GSI's Motion to Dismiss Counts XV, XXVII, XXXVIII, XLIV, LV and LVI of the Plaintiff's Second Amended Complaint (ECF #459); Defendant Oracle USA Inc.'s Motion to Dismiss Second Amended Complaint for Failure to State a Cause of Action and Supporting Memorandum of Law (ECF #464), Plaintiff's Response to Defendants' Motion to Dismiss (ECF #477)

[2] In *In re All American Semiconductor, Inc.*, 2010 WL 2854153 (Bank. S.D. Fla. July 20, 2010), I dismissed the First Amended Complaint primarily due to the Plaintiff's failure to specify which operative facts and claims were asserted against which defendants. In sum, the First Amended Complaint alleged that AASI had been ruined and that each of the named defendants had contributed to that ruin in some way; however the complaint did not specify how each defendant was responsible. In the motions to dismiss the Second Amended Complaint the Defendants once again raise issues relating to the precision of the allegations, arguing, as set forth in their various motions that the Second Amended Complaint still fails to meet the pleading standards required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Because I have granted the motions to dismiss on other grounds (except with respect to Count XIV, Count XXI, and Count LV) I will not address those issues in this opinion.

[3] GGT and GSI both join CSS's and Oracle's motions to dismiss to the extent those motions seek to dismiss claims that are also applicable to GGT and GSI.

[4] *See Supra* note 1.

Defendants have all filed replies to the Plaintiff's Omnibus Response.[5] For the reasons more fully described below, the Defendants' Motions to Dismiss are granted in part and denied in part.

## FACTUAL ALLEGATIONS

Each of the Defendants has been sued for its part in the alleged negligent design, installation, and implementation of an inventory management system, referred to as an Enterprise Resource Planning System (the "ERP System"), the failure of which, according to the Plaintiff, was a material, if not the principal, cause of the financial collapse of All American Semiconductor Inc. and its various subsidiaries and affiliates (collectively "AASI").[6] The Complaint alleges that the ERP System, after a two year delay and running over budget, went live on or about February 7, 2006 even though the system was not working properly, and, as a result, AASI's business was completely paralyzed for two weeks, AASI was never able to properly function again, and revenues decreased substantially - all of which lead the demise of AASI's business.[7]

---

[5] Defendant GSI's Reply to Plaintiff's Response to GSI's Motion to Dismiss Counts XV, XXVII, XXXVIII, XLIV, LV and LVI of the Plaintiff's Second Amended Complaint (ECF #483); Defendant CSS, Inc.'s Reply to Plaintiff's Response to CSS, Inc.'s Motion to Dismiss (ECF #490); and Defendant Oracle USA, Inc.'s Reply to Plaintiff's Response to Defendants' Motions to Dismiss (ECF #495).

[6] The break-down of the counts in the Complaint by cause of action and party is listed below:
Breach of Contract: (Count I - Oracle), (Count II - CSS), (Count III - GGT), and (Count IV - GSI).
Breach of Warranty: (Count XII - Oracle), (Count XIII - CSS), (Count XIV- GGT), (Count XV - GSI).
Breach of Implied Warranty: (Count XXI – CSS).
Strict Liability: (Count XXIV – Oracle), (Count XXV – CSS), (Count XXVI – GGT), (Count XXVII - GSI).
Negligence: (Count XXXV – Oracle), (Count XXXVI – CSS), (Count XXXVII – GGT), (Count XXXVIII – GSI).
Gross Negligence: (Count XLVI – Oracle), (Count XLVII – CSS), (Count XLVIII – GGT), (Count XLIX – GSI).
Misrepresentation: (Count LIV – Oracle and CSS)
Avoidance and Recovery of Fraudulent Transfers under 11 U.S.C. §§548(a)(1)(B) and 550: (Count LV - All Defendants).
Avoidance and Recovery of Fraudulent Transfers under Fla. Stat. §§726.105(1)(b) and 726.108: (Count LVI – All Defendants).
Avoidance and Recovery of Preferential Transfers under 11 U.S.C. §§547(b) and 550: (Count LVII – CSS and GGT).

[7] The ERP System at no point in time worked properly.

a. **Oracle**[8]

The Complaint alleges that PeopleSoft USA, Inc. ("PeopleSoft") was the "architect of the ERP System." On June 30, 2004 AASI entered into a contract with PeopleSoft to provide the platform of the ERP System and to provide maintenance, service, and support of the ERP System throughout all stages of its implementation (the "License Agreement"). The Complaint further alleges that PeopleSoft failed to perform under the License Agreement, that PeopleSoft failed to provide services consistent with generally accepted industry standards, that the ERP System was unable to handle the volume of transactions that PeopleSoft promised it could, and that PeopleSoft acted negligently and recklessly throughout the ERP System's creation and implementation.

b. **CSS**

AASI hired CSS to be "the primary consultant, architect, engineer, installer, integrator, trainer, and full service consultant in connection with the installation, integration, implementation, and ultimate delivery of the ERP system." The Complaint alleges that CSS failed to perform under the contract with AASI, that CSS failed to provide services consistent with generally accepted industry standards, that CSS acted recklessly, and that CSS was ultimately not qualified to implement the ERP System. The Complaint further charges CSS with constantly changing the personnel assigned to AASI, with knowing that the ERP System was a failure, and, along with PeopleSoft, with recommending that AASI hire Gary Kirk as Chief Information Officer of AASI, even though Gary Kirk lacked the necessary skills to do the job.

c. **GGT**

The Complaint alleges that, at the recommendation of PeopleSoft and CSS, AASI hired GGT to provide consultants to help implement the ERP System. The Complaint alleges that

---

[8] Oracle purchased PeopleSoft USA, Inc. ("PeopleSoft") months after PeopleSoft contracted with the Plaintiff.

GGT failed to provide services consistent with generally accepted industry standards and that GGT acted recklessly and with gross lack of care. The Complaint further alleges that GGT failed to conduct adequate testing or training, and that GGT failed to provide a backup system in case the ERP System failed.

**d. GSI**

The Complaint alleges that, at the recommendation of PeopleSoft and CSS, AASI also hired GSI to provide software development and consulting services. GSI's duties included architecture optimization, implementation, and demand support services for the ERP System. The Complaint alleges that GSI failed to provide services consistent with generally accepted industry standards and that GSI acted recklessly and with gross lack of care. The Complaint alleges in more detail that GSI knew that the ERP System was not performing correctly, that GSI failed to conduct adequate testing or training, and that GSI failed to provide a backup system in case the ERP System failed.

## JURISDICTION AND STANDARD OF REVIEW

I have jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b). As I discussed in more detail in my prior opinion dismissing the First Amended Complaint, this adversary proceeding involves intertwined core and non-core matters.[9] The preference and fraudulent transfer counts in the Complaint are core proceedings pursuant to 28 U.S.C.

---

[9] Memorandum Opinion on Orders Granting in Part and Denying in Part Motions to Dismiss or Abstain Filed by Various Defendants (ECF #280) (*In re All American Semiconductor, Inc.*, 2010 WL 2854153 (Bankr. S.D. Fla. July 20, 2010)):

> The Plaintiff also argues that the non-core and core matters are intertwined. The Defendants do not disagree, arguing however that the core proceedings are derivative of the state law issues. I agree. Indeed this underscores the inefficiency, if not the difficulty, of separating the core from the non-core claims, thereby making abstention inappropriate….To the extent any jury trial demands survive the pretrial process, bifurcation can be effectuated immediately prior to trial.

(citations omitted).

§157(b)(2)(F).[10] The state law claims, which existed prior to and independent of this bankruptcy, are non-core matters, but are related to this bankruptcy and the preference/fraudulent transfer counts pursuant to 28 U.S.C. §157(c)(2).

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must accept all factual allegations in the Complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). "[T]he relevant question for purposes of a motion to dismiss under Rule 12(b)(6) is 'whether, assuming the factual allegations are true, the plaintiff has stated a ground for relief that is plausible.'" *In re Luca*, 422 B.R. 772, 775 (Bankr. M.D. Fla. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 696 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations… a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) (citations omitted).

In evaluating a motion to dismiss under Rule 12(b)(6) courts must also determine whether a complaint states a cause of action and  usually begin "by taking note of the elements a plaintiff must plead to state a claim." *Iqbal,* 556 U.S. at 675. Federal Rule of Civil Procedure

---

[10] In the motions to dismiss that I addressed in my earlier opinion, no party questioned my jurisdiction over non-core claims. Nor did the District Court, affirming my decision, make any determination that my exercise of jurisdiction was inappropriate.  *In re All American Semiconductor, Inc.*, 2011 WL 3843943 (S.D. Fla. Aug. 29, 2011). Since my prior opinion, and, in fact, subsequent to the filing of the Complaint and all the pleadings I have considered in connection with this opinion, the Ninth Circuit has decided *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, Case No. 11–35162, 2012 WL 60113836 (9th Cir. Dec. 4, 2012) ("*Bellingham*"). In *Bellingham* the Ninth Circuit held, based on *Stern v. Marshall,* ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), that fraudulent conveyance actions, although identified as core proceedings in 28 U.S.C. §157(b)(2)(H), nonetheless are not, generally, proceedings in which the bankruptcy court may enter a final judgment.  However, whether the relief sought by Plaintiff in Counts LV, LVI and LVII are truly core, or core without final adjudicative authority, I have jurisdiction over these counts in accordance with 28 U.S.C. §1334.

8(a) requires that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief" and make "a demand for the relief sought."

Lastly, in evaluating a motion to dismiss under Rule 12(b)(6)  on statute of limitations grounds, a court must determine "if it is 'apparent from the face of the complaint' that the claim is time-barred." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 846 (11th Cir. 2004) (citations omitted).

## ANALYSIS

The Defendants raise various arguments in support of dismissal of various counts of the Complaint.  Some of the arguments raised by the four Defendants are the same.  I will address any collective arguments together rather than each motion to dismiss in turn, other than Oracle's Motion to Dismiss, which I am granting in full, with prejudice, for the reasons that follow.

### a. Any Suit Against Oracle is Time Barred

Oracle seeks dismissal of all counts against it, on the basis that the claims are time barred. Oracle asserts that the one year statute of limitations in the License Agreement[11]  bars all claims arising from or related to the License Agreement.[12]

The Plaintiff, in its response to Oracle's Motion to Dismiss, argues that the statute of limitations in the License Agreement is not binding because: 1) a one year statute of limitations

---

[11] Paragraph 13 of the License Agreement provides:

> Except for actions for: (i) Licensee's failure to assume its obligations for taxes; (ii) nonpayment of amounts owed to either party; or (iii) breach of PeopleSoft's or its licensors' rights in the Software or Documentation or either party's Confidential Information obligations, no action, regardless of form, arising out of, relating to or in any way connected with the Agreement, Software, Documentation or Services provided or to be provided by PeopleSoft may be brought by either party more than one (1)  year after the cause of action has accrued.

[12] The License Agreement is referenced in the Complaint, but is not attached.  A copy of the License Agreement is attached to Oracle's Motion to Dismiss. A document referenced in a complaint that is central to a plaintiff's claim is considered part of the complaint for purposes of a Rule 12(b)(6) motion, even if such document is not physically attached to the complaint. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

for the relief sought in the Complaint is void under Florida law; 2) the one year statute of limitations in the License Agreement is unreasonable under California law; and 3) the claims did not accrue until later and the Complaint was, therefore, timely filed.

Florida law does not apply to the License Agreement. The License Agreement specifically provides that it will be governed by the laws of the State of California; the Plaintiff has not argued that the choice of law provision in the License Agreement is invalid.  Thus, even if under Florida law the contractual limitation period of one year would be void because it is shorter than the applicable statutory limitation,[13] Florida recognizes and will enforce a shortened statute of limitations period if such a period is enforceable under the state law applicable to the dispute.  *See Burroughs Corp. v. Suntogs of Miami, Inc*. 472 So.2d 1166 (Fla. 1985) (A contract with a statute of limitations period void under Florida law, but enforceable under Michigan law, the law applicable to the contract, is enforceable in Florida and does not violate Florida's public policy); *see also Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340-1341 (11th Cir. 2005). Therefore, I do not need to address whether the one year statute of limitations is enforceable under Florida law, but only whether it is enforceable under California law.

The one year statute of limitations period in the License Agreement is shorter than the applicable California statute of limitations.[14] Under California law, shortened statutes of limitations are enforced unless they are unreasonable. *See William L. Lyon & Assoc. Inc. v. Superior Court*, 139 Cal. Rptr. 3d 670, 679 (Cal. Ct. 4th App. 2012) ("Under California law parties may agree to a provision shortening the statute of limitations, qualified, however, by the requirement that the period fixed is not in itself unreasonable or it is not so unreasonable as to

---

[13] Fla. Stat. §95.03 provides that "[a]ny provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void."

[14] The California statute of limitations is four years for an "action upon any contract, obligation or liability founded upon an instrument in writing…." Cal. C. C. P. § 337.

show imposition or undue advantage."). Under California law, "'[i]t is a question of law whether a case or a portion of a case is barred by the statute of limitations....'" *Id* at 677 (citations omitted). Thus, a court does not need to look at the particular facts of a case to determine if a shortened limitations period is reasonable, a court must only determine if "the period of limitation, *in itself*, [is] unreasonable." *Id*. at 679.

The Plaintiff relies on *Western Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 952 (9th Cir. 2008) ("*Western Filter*"), arguing that, while shortened limitations periods are allowed in California, they are "not favored" and should be "construed with strictness against the party invoking them." However, the *Western Filter* decision did not hold that the use of a shortened statute of limitations was prohibited; the court held that if parties contract for, and then rely on, a shortened statute of limitations, that the clause in the contract must be clear and explicit; a shortened statute of limitations will be enforced unless the contractual language is ambiguous. *Id*. at 952-954.

The language in the License Agreement is clear and explicit: "no action, regardless of form, arising out of, relating to or in any way connected with the Agreement, Software, Documentation or Services provided or to be provided by PeopleSoft may be brought by either party more than one (1) year after the cause of action has accrued." The Plaintiff does not suggest that this clause is ambiguous. Nonetheless, the Plaintiff argues that the one year statute of limitation period is unreasonable and is therefore not enforceable under California law.

However, many California courts have upheld unambiguous contractual one year statutes of limitations as fair and reasonable.[15]

In this case, while it is true that the ERP system was "complex," as the Plaintiff argues, Oracle's alleged responsibility for its failure was not difficult to adduce.  The Complaint alleges that PeopleSoft was the "chief architect of the ERP System, along with CSS" and the initial party that AASI approached when AASI decided to explore implementing the ERP System.  The Complaint also describes a process that was disorganized, disjointed and chaotic, long before the system "went live" in February, 2006.  Indeed, the Complaint alleges, things got so out of hand that AASI first had to add GSI and then GGT to the design team.  This Complaint does not describe a "breach of duty … more difficult to detect."  Accordingly, I find that the one year statute of limitations in the License Agreement is enforceable under California law.

The Plaintiff's last argument in opposition to Oracle's statute of limitations defense is that, even if the one year statute of limitations applies to this case, the causes of action against Oracle did not accrue until several months after the "Go Live Date" of February 7, 2006. Under California law, a cause of action for breach of contract accrues at the time the contract has been breached, regardless of whether any damage is apparent or whether the injured party is aware of the right to sue. *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005) (applying California law). Assuming the facts in the Complaint as true, the causes of action against Oracle accrued no later than, and probably before, the "Go-Live Date," given that the Plaintiff alleges that the

---

[15] *See e.g.*, *Morning Star Packing Co., L.P. v. Crown Cork & Seal Co. (USA), Inc*., 303 Fed. Appx. 399, (9th Cir. 2008) (Applying California law, the reduction of a statute of limitations period to one year was enforceable); *Moreno v. Sanchez,* 106 Cal.App.4th 1415,1440 (2003) ("California courts have uniformly enforced provisions shortening the four-year statutory limitations period for breach of a written contract…to one year."(citations omitted)); *C. & H. Foods Co. v. Hartford Ins. Co*. 163 Cal.App.3d 1055, 1064 (1984) ("'[a] covenant shortening the period of limitations is a valid provision of an insurance contract and cannot be ignored with impunity as long as the limitation is not so unreasonable as to show imposition or undue advantage. One year was not an unfair period of limitation.'" (citations omitted)); *Girardi v. Princess Cruises*, No. B217192, 2010 WL 3310360, at *4 (Cal. App. 2d Dist. Aug. 24, 2010) ("[O]ne-year limitations have been upheld repeatedly by the courts as reasonable and fair.").

shortcomings of the ERP System where known prior to the "Go Live Date," that the ERP System immediately failed as soon as it went online, and that AASI hired GSI and GGT due to PeopleSoft's failure to perform adequately under the License Agreement.

It is undisputed that all the counts in the Complaint against Oracle relate to the License Agreement and that the causes of action accrued no later than February of 2006. It is also clear that any action against Oracle relating to the License Agreement had to have been brought prior to the Petition Date.[16] Accordingly, all the counts against Oracle are dismissed with prejudice.[17]

### b. The Economic Loss Rule Bars all the Counts for Negligence, Gross Negligence and Strict Liability.

CSS, GGT, and GSI[18] each seek to dismiss the counts for negligence, gross negligence, strict liability, and misrepresentation[19] (together the "Tort Claims") based on the economic loss rule. Each defendant argues that the Complaint seeks to recover only economic damages and that each of them was in contractual privity with AASI and therefore each count of the Complaint based on tort must be dismissed.

The economic loss rule "is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indemnity Ins. Co. v. American Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004) ("*Indemnity Insurance*"). In Florida, "the economic loss rule bars a [tort] action to recover solely economic damages only in circumstances where the parties are either in contractual privity or the defendant

---

[16] The AASI bankruptcies were filed on April 25, 2007.
[17] Because I find that the statute of limitations in the License Agreement bars all the claims against Oracle in the Complaint, I do need not address Oracle's other arguments for dismissal.
[18] In their respective motions to dismiss GGT and GSI adopt by reference the arguments raised by CSS in its motion to dismiss.
[19] The count for misrepresentation only seeks relief against CSS and Oracle.

is manufacturer or distributor of product." *Id*. at 544. [20] However, even where the parties are in contractual privity, Florida law permits tort actions under two circumstances - for a tort committed independent of the contract breach, such as fraud in the inducement; and, when a plaintiff is suing a defendant for professional negligence. *Id*. at 537. [21] Moreover, the economic loss rule will not bar an action against the manufacturer or distributor of a product where the damage caused is to, persons or "other property." *Id*. at 544.

The Plaintiff argues that, under Florida law,[22] the economic loss rule does not bar recovery because the defective product, the ERP System, caused damage to other property, AASI's goodwill. The Plaintiff further argues that the economic loss rule does not bar professional malpractice claims, and because the Tort Claims against CSS, GGT, and GSI arise from professional malpractice, such claims are not barred by the economic loss rule.

### i.   Damage to Goodwill and Reputation is not Damage to Other Property

The Plaintiff alleges that the ERP System caused the loss of all of AASI's goodwill and the destruction of its reputation, and that therefore, the loss of the business falls under the damage to "other property" exception to the economic loss rule.  The Defendants argue that

---

[20] Economic damages are "'disappointed economic expectations,' which are protected by contract law, rather than tort law." *Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993) ("*Casa Clara*") (citations omitted).

[21] When parties are in contractual privity, the purpose of the economic loss doctrine is to "prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Indemnity Insurance,* 891 So.2d at 536. "[P]arties to a contract have allocated the economic risks of nonperformance through the bargaining process… [a] party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made." *Id.*  With respect to product liability actions, "the economic loss rule… prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself. *Casa Clara,* 620 So.2d at 1246. This exception was "developed to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided for by warranty law. *Indemnity Insurance*, 891 So.2d at 538.

[22] Florida law applies to the tort claims because the torts are alleged to have occurred in Florida (Complaint ¶27). Absent a significant relationship to another state, "[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law." *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980).  I further note that none of CSS, GTI, GGT have argued that Florida law does not apply or that a different state has a more significant relationship to the alleged tortious acts.

"goodwill' and "reputation" do not constitute "other property" for purposes of avoiding application of the economic loss rule.

Several cases outside of Florida have rejected the argument that damage to reputation or goodwill avoids application of the economic loss rule. "[I]f the loss to goodwill results from the failure of a product to perform as expected, and not from injury to another person or other property those losses are commercial and are not recoverable in tort… [a]ny other holding would swallow the economic loss doctrine; parties would be able to end-run the law of contract and the Uniform Commercial Code by the simple expedient of pleading that their commercial losses - repair costs, lost profits and the like – included damage to business goodwill*." Cooper Power Systems, Inc. v. Union Carbide Chemicals & Plastics, Co.*, 123 F.3d 675, 681-682 (7th Cir. 1997) (citations omitted). S*ee also Gentek Bldg. Products, Inc. v. Sherwin-Williams, Co.,* 2005 WL 6778678 (N.D. Ohio Feb. 22, 2005); *Zurich Ins. Co. v. Let There Be Neon City, Inc.,* 33 Conn. L. Rptr. 603 (Conn. Super. Ct.  2002).

Conversely, a Florida federal judge recently rejected a defendant's argument that allegations of loss of goodwill do not avoid the economic loss rule unless the alleged damage was caused by a separate and distinct tort claim. "Defendants… confound the two exceptions of the economic loss rule and misread those cases, which establish that it is precisely the allegations of other property damage that render a tort claim independent of a contractual breach." *Gomez Packaging Corp. v. Smith Terminal Warehouse Co.*, 2011 WL 5547146 at *5 (S.D. Fl. Nov. 14, 2011).  *See also Mobile Oil Corp. v. Dade County Esoil Mgt. Co.,* 982 F.Supp. 873, 880 (S.D. Fl. 1997) ("[T]he economic loss rule does not apply to this cause, because Mobil has alleged damage to the goodwill of its trademark and brand name."); *Anthony Distributors, Inc. v. Miller Brewing Co.*, 904 F. Supp. 1363, 1366 (M.D. Fla. 1995) ("Damage to Miller's property

[trademark] is alleged to have caused damage distinct from the damages flowing from the contractual breach.  Consequently, the economic loss rule does not bar the action for fraud….").

Who is right? Is goodwill "other property" or is it merely a measure of damage arising from "disappointed economic expectations"? In revisiting and clarifying the scope of the economic loss rule, the Florida Supreme Court emphasized that, with respect to the contractual economic loss rule, "no cause of action in tort can arise from a breach of a duty existing by virtue of contract." *Indemnity Insurance*., 891 So.2d at 537 (citing *Weimar v. Yacht Club Point Estates, Inc.,* 223 So.2d 100, 103 (Fla. 4th DCA 1969)).  Moreover, as the Florida Supreme Court clarified in *Indemnity Insurance*, the "other property" exception only applies in connection with the product liability economic loss rule, that is, in an action against the manufacturer or distributor of a product; it does not apply in cases involving the contractual economic loss rule. I hold that goodwill is not "other property" the damage to which would avoid application of the economic loss rule, but rather, goodwill is a measure of disappointed economic expectations.

Moreover, even if there was a scenario in which goodwill could be viewed as "other property", in this case, the Complaint does not allege that any of CSS, GGT or GSI is a manufacturer or distributor of a product; the Complaint merely makes general allegations that each Defendant was a "typical provider of the goods and services." However, as more fully discussed later in this opinion, the Complaint did not include a copy of any of the agreements with CSS, GGT, or GSI, and the allegations of the Complaint as to each Defendant describe the obligations of each of these Defendants as "support services," and "technical consulting," not as the provider or manufacturer of anything.

Thus, even if damage to goodwill did constitute "damage to other property" for purposes of avoiding the consequences of the economic loss rule, the exception would not apply in this

case because the Complaint does not adequately plead the predicate applicability of the "other property" exception to the economic loss rule – that is, that any of the Defendants are providers or manufacturers of a product.

I find that the Seventh Circuit interpretation is consistent with Florida law. The damage to AASI's goodwill and the destruction of its reputation does not constitute damage to "other property" for purposes of eliminating applicability of the contractual economic loss doctrine, and the Complaint does not allege that the Defendants are liable as providers or manufacturers of a product.  Damage to AASI's goodwill is an element of its damages.

> **ii.    An Action in Professional Malpractice May only be Brought Against Individuals, not Entities and only Against Professionals**.

Nonetheless, damage to other property is not necessary to avoid application of the economic loss rule where the claim for damage arises from an independent tort or exception to the contractual economic loss rule "such as for professional malpractice, fraudulent inducement, and negligent misrepresentation …." *Indemnity Insurance*, 891 So.2d at 543 (citations omitted).

The Plaintiff argues that the services provided by the Defendants fall within the professional malpractice exception to the contractual economic loss rule. The Defendants counter that the Complaint does not allege the services provided by the Defendants were "professional services" and, even if the Plaintiff had alleged that the Defendants provided professional services, the Complaint is deficient because it fails to sue the engineers individually as required by the exception.

The Florida Supreme Court recognized a claim for professional malpractice as an exception to the economic loss rule in *Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999) ("*Moransais*").  Mr. Moransais hired an engineering firm, Bromwell & Carrier, Inc. ("BCI") to inspect a house Mr. Moransais wished to buy. Two engineers, Mr. Jordan ("Jordan") and Mr.

Sauls ("Sauls"), actually performed the inspection.  Notwithstanding their "okay to purchase"

advice, Mr. Moransais discovered serious defects after closing, defects, he alleged, Jordan and

Sauls should have discovered, defects that rendered the home uninhabitable.  In addition to suing

BCI for breach of contract, Mr. Moransais sued Jordan and Sauls for professional negligence.

In ruling that the suit against Jordan and Sauls was not barred by the economic loss rule

notwithstanding that they were employees of a party with whom the plaintiff was in contractual

privity, and notwithstanding there was no personal injury or property damage[23] the court held

that, as professionals, Jordan and Sauls owed an independent duty to the plaintiff both under

common law and the Florida Statutes.[24] "[T]he economic loss rule may have some genuine, but

limited value, in our damages law, we never intended to bar well-established common law causes

of action, such as those for neglect in providing professional services." *Id.* at 983. The court also

held that the fundamental principles underlying causes of action for professional malpractice

would be undermined if such actions were barred in the absence of damage to person or

property.[25]

What is significant about the holding in *Moransais* for purposes of these motions to

dismiss is that *Moransais* is limited specifically to professionals.  The Supreme Court cited to

*Garden v. Frier*, 602 So.2d 1273 (Fla. 1992) which defines a "professional" as a person engaged

in a vocation requiring at a minimum a four-year college degree before licensing is possible. A

vocation is not a profession if there is any alternative method of admission that omits the

---

[23] There were two certified questions considered by the Florida Supreme Court:
   1) Where a purchaser of a home contracts with an engineering corporation, does the purchaser have a cause of action for professional malpractice against an employee of the engineering corporation who performed the engineering services?
   2) Does the economic loss rule bar a claim for professional malpractice against the individual engineer who performed the inspection of the residence where no personal injury or property damage resulted?
[24] Fla. Stat. §621.07 and §471.023.
[25] "[B]ecause actions against professionals often involve purely economic loss without any accompanying personal injury or property damage, extending the economic loss rule to those cases would effectively extinguish such causes of action." *Id.* at 983.

required four-year undergraduate degree or graduate degree, or a state license is not required at all. *Id*. at 1276.

Finally, the professional malpractice exception only applies to the professionals themselves, not to their employers or corporate entities with whom they are affiliated.  Indeed, in truth, although, in *Indemnity Insurance*, the Florida Supreme Court describes the professional malpractice exception as distinct from the "separate and independent tort" exception, it is really a subset of the independent tort exception. Since the Plaintiff failed to sue the individual professionals, or include specific allegations that the individuals were professionals, the Complaint fails to adequately plead that the professional negligence exception to the economic loss rule applies in this case.

Therefore, Counts XXXVI, XXXVII and XXXVIII (negligence), Counts XLVII, XLVIII and XLIX (gross negligence), and Counts XXV, XXVI and XXVII (strict liability) are dismissed.

**c.    The Count for Misrepresentation is not Barred by the Economic Loss Rule**

Finally the Plaintiff argues that its claim for misrepresentation is not barred by the economic loss rule because it involves tortious acts independent of the contract breaches. CSS argues in response that the Plaintiff fails to allege any act outside of a contract breach and that the Plaintiff is simply reiterating its dissatisfaction with the quality of services provided by CSS.

Count LIV of the Complaint alleges that PeopleSoft and CSS misrepresented "the quality of the services and products they were to provide." If this were all that was alleged in the Complaint I would agree with CSS that this count is barred by the economic loss rule.

However, the actual descriptive paragraphs of the Complaint allege that CSS represented that it was "exceedingly well qualified" and "certified … to provide the services and products

that would successfully achieve All American's goals… that [CSS] would be able to properly integrate into the ERP system the various third party software…." (¶¶ 39 and 40). And yet, the Complaint alleges, "CSS was not qualified to design and implement the ERP System for All American.  In fact, despite its claimed reputation of qualified aid and expertise… CSS was completely and woefully incapable of delivering the final product." (¶ 131).

In Florida to state a cause of action for negligent misrepresentation a plaintiff must allege that:

> (1)  The defendant made a misrepresentation of material fact that he believed to be true but which was in fact false;
> (2)  The defendant was negligent in making the statement because he should have known the representation was false;
> (3)  The defendant intended to induce the plaintiff to rely and [sic] on the misrepresentations; and
> (4)  Injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.

*Simon v. Celebration Co.,* 883 So. 2d. 826, 832 (5th DCA 2004).

As I already noted, the Florida Supreme Court has specifically recognized negligent misrepresentation is an independent cause of action that falls outside the economic loss rule. I find (a) the Plaintiff has adequately pled a claim for negligent misrepresentation and (b) this claim is not barred by the economic loss rule. Therefore Count LIV, as it applies to CSS, is not dismissed.

### d.  Breach of Implied Warranty  and the "Product" Requirement

CSS additionally seeks dismissal of the Plaintiff's breach of implied warranty claim on the basis that a breach of implied warranty claim is inapplicable to a contract for services, and,

CSS argues, services are all it provided.[26] The Plaintiff appears to concede that an action for breach of implied warranty requires that the defendant have provided goods; the Plaintiff argues that the Complaint adequately alleges that CSS agreed to provide, and that CSS actually provided, goods, because computer software programs are "goods" under the Uniform Commercial Code, and CSS was a merchant of programming products.

Because the Complaint does not include a copy of the agreement with CSS, I must look at how the Complaint describes what CSS agreed to provide to AASI. The Complaint alleges generally that CSS provided goods and services (¶¶ 125 and 126). However, the more detailed portions of the Complaint describe those goods and services as:

> Specifically, CSS was hired to be the lead consultant on-site at All American, ensuring all the various elements, components, hardware and software were adequately integrating into the ERP system.

Goods are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 678) and things in action." Fla. Stat. §672.105(1). Often contracts are both for goods and services. When faced with a "hybrid contract" Florida courts use the predominant factor test to determine whether a contract is for goods or services. *BMC Industries, Inc. v. Barth Industries, Inc.*, 160 F.3d 1322, 1330-1331 (11th Cir. 1998) (applying Florida law). Whether a contract is predominantly for goods or services is generally a question of fact, but when there is no genuine issue of material fact concerning a contract's provisions, a court may determine the issue as a matter of law.[27]

---

[26] CSS, together with GGT and GSI by virtue of their joinder, also argue that the counts for strict liability cannot stand because an action based on strict liability requires that a defendant provide goods, not services. Because I already dismissed the strict liability counts (Count XXV, Count XXVI, and Count XXVII) based on the economic loss rule, I will not address these counts here. However, having ruled that based on the allegations of the Complaint, the primary purpose of the applicable agreements was to provide services, not goods, the strict liability counts would be dismissed on these grounds as well.

[27] *See Allmand Assocs., Inc. v. Hercules Inc.,* 960 F.Supp. 1216, 1223 (E.D. Mich. 1997)

The Complaint, in defining the contractual relationship between AASI and the CSS, describes the relationship solely in terms of services. Even if the contract between AASI and CSS included the sale of goods, in applying the predominant factor test, it is clear that, as pled, the primary purpose of the contract between AASI and CSS was for consulting services. The Plaintiff attempts to recharacterize the nature of the relationship between AASI and the CSS by referring to the services provided by CSS as "programming products." Nonetheless, based on the descriptions in the Complaint of the agreement between CSS and AASI, there is no factual ambiguity; the nature of the "product" provided by CSS to AASI is a service.

Because AASI contracted with CSS for services, the Complaint fails to state a cause of action under Count XXI - breach of implied warranty. Therefore, Count XXI is dismissed.

### e. Breach of Warranty

Both Oracle and GGT seek dismissal of the Breach of Warranty counts.[28] GGT seeks dismissal of Count XIV because, according to GGT, the Complaint contains no facts about what services GGT allegedly wrongfully performed or how those services allegedly contributed to the failure of the ERP system. In order to sustain an action for breach of warranty in Florida, the complaint must allege the facts in respect to sale of goods, the type of warranty created, the facts giving rise to the creation of the warranty, notice of breach, and injury. *Dunham-Bush, Inc. v. Thermo-Air Service, Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977).

I have already noted that the Complaint failed to attach a copy of AASI's contract with GGT. I have also already noted that, as drafted, the Complaint describes the contract with GGT as one that primarily, if not exclusively, provides for services. Moreover, while the Plaintiff appears to specifically describe those acts which could constitute a breach of warranty under a contract, nowhere does the Plaintiff describe what goods were to be provided, if any, how

---

[28] Oracle's Motion to Dismiss is granted for the reasons stated above.

specifically those goods failed, and how those failures caused damage to AASI. Therefore, Count XIV is dismissed.

### f.  Lack of Specificity in Pleading the Fraudulent Transfer Claims

CSS, together with GGT and GSI by way of joinder, seek dismissal of the Plaintiff's claims under 11 U.S.C. §548 (Count LV) and Fla. Stat. §§726.105(1)(B) and 726.108 (Count LVI) because the claims, as pled, are not facially plausible. CSS states that the Plaintiff fails to allege any of the circumstances surrounding the alleged transfer, and fails to allege when and how AASI became insolvent.

The Complaint alleges that all the transfers to each of the Defendants described in Exhibit A of the Complaint were paid in connection with the ERP System, and since the ERP System "completely failed and eviscerated the value of All American," AASI did not receive reasonably equivalent value in exchange for the payments.  Since this is the theory of recovery, that is, what AASI "bought" had no value, I find that this portion of the fraudulent transfer claim states a cause of action.

As for insolvency, while the Defendants are correct that the Complaint includes a recitation of the elements of insolvency, in Count LVI, ¶544, the Plaintiff also alleges "All American became insolvent as a result of the payments to the Defendants in connection with the ERP System." There is no similar paragraph in Count LV.

Generally, insolvency is a factual determination not appropriate for resolution in a motion to dismiss. *See e.g., Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 35 (2d Cir.1996) and *Adelphia Commc'ns. Corp. v. Bank of America, N.A. (In re Adelphia Commc'ns. Corp.)*, 365 B.R. 24, 37 (Bankr. S.D.N.Y. 2007).  Nonetheless, Count LV makes no specific allegation of insolvency.  Accordingly, Count LV is dismissed.

GGT, by way of joinder to Oracle's Motion to Dismiss, also seeks dismissal of the fraudulent transfer claims because AASI, as Oracle claims, received reasonably equivalent value for the transfers. What is "reasonably equivalent value" is predominantly a factual determination. *Senior Transeastern Lenders v. Official Committee of Unsecured Creditors (In re TOUSA, Inc.),* 2012 WL 1673910 (11th Cir. May 15, 2012); *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.),* 904 F.2d 588, 593 (11th Cir.1990). Accordingly, Count LVI is not dismissed.

### g.  Preferential Transfers Pursuant to 11 U.S.C. §547

CSS seeks dismissal in part of the Plaintiff's claim for recovery of certain preferential transfers. CSS argues that, according to Exhibit B of the Complaint, certain transfers to CSS occurred 98 days before AASI filed for bankruptcy, and therefore falls outside the 90 day preferential transfer period of  11 U.S.C. §547.  The Plaintiff responds that even though the check was issued on January 17, 2007 by AASI to CSS, 98 days prior to bankruptcy, the check did not clear until February 12, 2007, within the 90 day prejudice period, and that for purposes of section 547, it is the date a check clears that counts as the date of the transfer.

In *Barnhill v. Johnson* 503 U.S. 393, 394-95 (1992) the Supreme Court held that "a transfer by check is deemed to occur" on the date the drawee bank honors [the check], "not the date when the check is presented to the payee." However, the Complaint relies on Exhibit B, which lists a check issue/wire date, and does not indicate a separate "honor date." Therefore, on the face of the Complaint, it is not clear whether the date the payment was honored fell within or outside the preference period. Although Plaintiff's response states the payment was by check and honored within the preference period, those facts are not pled. Thus, on its face the Complaint fails to state a cause of action. Therefore, Count LVII is dismissed as to CSS.

GGT objects to the Plaintiff's preference claim against it, based on the ordinary course of business defense. The ordinary course defense to a preference action is an affirmative defense. Affirmative defenses are not properly considered on a motion to dismiss, unless the "complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1277 (11th Cir. 2004). The Complaint does not conclusively establish that GGT is entitled to the ordinary course of business defense. Therefore, Count LVII is not dismissed as to GGT.

**h.  The Omnibus Objection to Claim does not Comply with Rule 3007.**

CSS moves also to dismiss Count LVIII, the Plaintiff's objection to claim, because it does not meet the requirements of Federal Rule Bankruptcy Procedure 3007 or Local Rule 3007.1. CSS is correct.  Therefore, Count LVIII is dismissed.

## CONCLUSION

In summary, all the counts against Oracle, Counts I, XII, XXIV, XXXV, XLVI, LIV, LV, LVI, and LVII, are dismissed with prejudice with respect to Oracle. Counts XIV, XXI, XXV, XXVI, XXVII, XXXVI, XXXVII, XXXVIII, XLVII, XLVIII, XLIX, LVIII, and LV are dismissed with leave to amend.

There is no question that the ERP System failed.  And there is no question that the failure is the fault of those responsible for providing the ERP System to AASI.  However, the Plaintiff continues to suffer from an inability to describe properly what exactly it is that each remaining defendant was required to do, and at least, in general, describe how those particular obligations of that particular defendant were breached.  I understand that, with respect to certain providers, it is difficult to describe in exhausting, technical detail, that which occurred or didn't occur. Moreover, with respect to many parts of the Complaint, the Plaintiff has managed to meet the

obligations of Federal Rules of Civil Procedure 8 and 12.  And so, I will give the Plaintiff one more opportunity to get it right.  Perhaps attaching copies of the operative agreements will be of some assistance to the Plaintiff and the remaining defendants, as well as myself, in determining what causes of action arising from what circumstances, are viable.  Nonetheless, this is the last opportunity.

The Plaintiff will have 30 days from the date of this order to file a new amended complaint that corrects the deficiencies (if the facts make it possible) of the counts I have dismissed without prejudice. The remaining defendants shall have 21 days to file any response to what will now be the Third Amended Complaint.

### 

Copies furnished to:
Thomas M. Messana, Esq.
Gregory S. Grossman, Esq.
Jimmy D. Parrish, Esq.
Peter A. Tappert, Esq.
Matthew C. Martin, Esq.

*Attorney Messana shall serve a copy of this order upon all parties in interest and file a certificate of service with the Clerk of Court.*