## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re                                                            Chapter 11

ALL AMERICAN SEMICONDUCTOR,              Case No. 07-12963-BKC-LMI
INC., *et al.*,                                        (Jointly Administered)

_____ Debtor._____/

AASI CREDITOR LIQUIDATING TRUST,
By and Through Kenneth A. Welt, Liquidating
Trustee, pursuant to the confirmed Third Amended
Plan of Liquidation of The Official Committee
of Unsecured Creditors,

                         Plaintiff,

v.                                                              Adv. Pro. No. 09-1466-LMI

Global Group Technologies, Inc., Global Systems
Integration, Inc., Precision Software, Limited,
Data Systems International, Inc.

_____ Defendants._____/

### MOTION TO LIFT STAY AND TO DISMISS THIRD
### AMENDED COMPLAINT AGAINST DATA SYSTEMS INTERNATIONAL

Data Systems International ("DSI") moves this Court to lift the stay entered on July 21,

2010, and pursuant to Bankruptcy Rule 7012, dismiss the Third Amended Complaint against DSI.

In support, DSI submits this Memorandum of Law.

### INTRODUCTION

This adversary proceeding was filed against DSI on April 24, 2009, and has been pending

for almost 11 years.  On July 21, 2010, the Court entered an order staying and abating the claims

of the AASI Creditor Liquidating Trust ("Trustee") against DSI in favor of arbitration (the "Stay

Order").  Despite this Order allowing the Trustee to proceed in arbitration, the Trustee did <u>not</u> do

4825-3068-5107 v13

so. Rather, for years it continued litigation, including filing Second and Third Amended Complaints against DSI and others. In fact, the Third Amended Complaint against DSI was filed almost three years after the Stay Order.

The Trustee claimed in the Second and Third Amended Complaints that he recognized the claims against DSI are stayed, and that the inclusion of DSI in the Complaints was to preserve his cause of action. However, as explained in detail later, even though these complaints were filed after the case had been stayed, they contained significant new allegations against DSI that did not appear in prior complaints.

By August 2015, about four and a half years ago, the Trustee had resolved his claims against the other 16 defendants in this matter. However, even though DSI was the sole remaining defendant, the Trustee still did not initiate an arbitration against DSI during the many years since the Stay Order, and since resolving all the other claims in this adversary proceeding.

Now, almost ten years after the Stay Order, the Trustee is attempting to revive his claim against DSI through an arbitration demand filed with the American Arbitration Association on January 22, 2020. This extreme delay defies any reasonable expectations of DSI and the Court, is prejudicial to DSI, and should be considered a "default" under the Federal Arbitration Act resulting in a waiver of arbitration.[1]

Thus, DSI requests the Court lift the Stay Order because the Trustee has waived his right to arbitration, and then dismiss the Trustee's claims against DSI based on a one year limitation period in the contract between the parties. As will be explained, the Trustee's claims against DSI are barred by the one-year contractual limitation provision, the enforceability of which is actually

---

[1] DSI filed a Motion to Dismiss Amended Complaint Or For Abstention (in favor of arbitration), which led to the Stay Order. However, DSI had no thought that AASI would wait another 10 years before initiating arbitration. After the passage of years without any action by the Trustee, DSI had assumed at various times that the Trustee was no longer pursuing the claim against DSI.

the law of this case.  In 2013, in this same adversary proceeding, the Court found that a similar provision in a contract between AASI and defendant Oracle USA, Inc. barred the Trustee's claims against Oracle.

A dismissal of the Trustee's claims against DSI would provide for a complete resolution of this adversary proceeding, and allow the parties to avoid the time and expense of arbitrating or litigating claims that are time barred, and have other serious deficiencies beyond the contractual time limitation provision.[2]

## BACKGROUND

### I.    The Trustee's Factual Allegations

The essence of the Third Amended Complaint involves the work on and alleged failure of All American Semiconductor, Inc's ("AASI") ERP System, a new system designed to integrate AASI's business functions, such as sales, shipping, and ordering.  Third Amended Complaint, ECF #542, ¶¶ 19-20.

AASI entered into a software license, services, and maintenance agreement (the "Agreement") with DSI in October of 2004.  *See* Agreement, attached hereto as **Exhibit A** (also previously attached to the Trustee's Third Amended Complaint as Exhibit F).  The Trustee contends that in performing that Agreement, DSI, along with several other defendants, contributed to the failure of AASI's ERP System.  Third Amended Complaint, ECF #542, ¶ 19.  Specifically, the Trustee alleges that DSI and the other defendants improperly allowed the ERP System to "go live" on February 7, 2006, resulting in "devastating effects" that AASI "felt immediately."  *Id.* ¶ 84.

---

[2] DSI is not currently seeking dismissal on grounds other than the contractual limitations provision.  However, several other grounds exist for barring or limiting AASI's claims against DSI, and are discussed later.

Based on that alleged failure under the Agreement, the Trustee brings claims against DSI for Breach of Contract (Count V); Breach of Warranty (Count X); Strict Liability (Count XVI); Negligence (Count XXI); Gross Negligence (Count XXVI), and Avoidance and Recovery of Fraudulent Transfers (Counts XXVIII and XXIX).

## II.    The Agreement Between AASI and DSI

The Agreement between DSI and AASI sets out certain agreed-upon limitations to the parties' obligations to one another. *See* Exhibit A**.**[3]

First, most critically here, under Article XI(1) of the Agreement, the parties agreed that no action may be brought more than one year after AASI knew or should have known of the alleged breach of contract. *Id.* at Article XI(1). That section provides that: "No action arising out of or related to this Agreement may be brought more than one (1) year after the claiming party knew or should have known." *Id.* As explained in detail herein, under this provision all of the Trustee's claims against DSI are barred as being filed outside the one-year contractual limitations period.

Second, under Article VIII of the Agreement, the parties agreed that DSI's maximum liability is for the amount of the fees paid by the customer for the relevant products and/or services giving rise to the liability (the total paid by AASI to DSI under the Agreement was approximately $1.013 million):

> "Unless specifically set forth in this Agreement and except for (i) a breach of Article VI, (ii) any breach of Customer's intellectual property rights, and (iii) the indemnification obligations of DSI under Article IX, **DSI's liability for damages under this Agreement shall be limited to the amount of the fees paid by Customer for the relevant Licensed Products, Maintenance Services or Training giving rise to the liability.**"

*Id.* at Article VIII (emphasis added).

---

[3] The Agreement specifies Delaware law governs disputes under it. Exhibit A, at Article XI(2).

Third, the Agreement provides that neither party can be held liable for indirect or consequential damages, including damages for loss of good will, profits, or business interruption, whether such claim is labeled tort or contract.

> "[I]n no event shall either party be liable for any indirect, special, multiple, exemplary, incidental, punitive or consequential damages including, without limitation, damages for loss of goodwill, profits, data, (or use thereof), or business interruption arising out of either party's act or failure to act, whether such damages are labeled in tort, contract, or otherwise."

*Id.* at Article VIII.

## III. Procedural History

AASI filed a Chapter 11 bankruptcy on April 25, 2007, more than 14 months after the "go live" date of the ERP System. Third Amended Complaint, ECF #542, ¶ 9.  On April 24, 2009, almost two years later, the Trustee filed this action against DSI and 16 other defendants all allegedly taking part in the ERP System's downfall.  The Trustee's First Complaint, ECF #1.  On June 29, 2009, in response to the Amended Complaint, DSI filed its Motion to Dismiss or for Abstention.  ECF #143.  On July 21, 2010, pursuant to an agreement between the parties, this Court abated and stayed the adversary proceeding as to DSI, allowing the Trustee to seek arbitration.  ECF #287.

However, a week later, on July 28, 2010, despite the fact the case against DSI had been stayed, the Trustee filed a Second Amended Complaint against DSI and the other remaining defendants. ECF #302.  As explained later herein, the Second Amended Complaint contained significant new allegations against DSI, none of which were present in the prior complaints.

Then, on February 22, 2013, two and a half years later, the Trustee filed a Third Amended Complaint against DSI and the other remaining defendants.  ECF #542.  The Third Amended

Complaint repeated the new allegations against DSI that were not part of any complaint prior to the Stay Order.

The Trustee's claims were ultimately dismissed with prejudice as to all defendants except DSI. Most notably for purposes of this Motion, the Trustee's claims against Defendant Oracle USA, Inc. were dismissed with prejudice by the Court on contractual limitations grounds on January 25, 2013. Memorandum Opinion on Defendants' Motion to Dismiss, ECF #521.

In that Opinion, this Court determined that the contract between AASI and Oracle contained a one-year limitation period within which to bring claims relating to that contract. *Id.* at 9. The Court found that by the Trustee's own allegations, "the causes of action against Oracle accrued no later than, and probably before, the 'Go-Live Date.'" *Id.* at 10. The Court concluded that because the causes of action accrued no later than February of 2006, "any action against Oracle relating to the [parties' contract] had to have been brought prior to the Petition Date." *Id.* at 11.

As indicated previously, by August 2015, all claims against all of the other 16 defendants involved in this adversary proceeding had also been resolved.[4] DSI was the sole remaining defendant. But the Trustee took no further action for almost five years.

Finally, on January 22, 2020, nearly 11 years after filing its initial Complaint, the Trustee filed an Arbitration Demand against DSI before the American Arbitration Association. A true and correct copy of the Arbitration Demand is attached hereto as **Exhibit B**.

---

[4] As of the February 2013 Third Amended Complaint, four other defendants remained, but all such claims have since been settled, the latest being the claims against CSS International, Inc. which were settled in August 2015. *See* ECF #700 (settlement with GSI and GGI); ECF #755 (settlement with Precision Software Limited), and ECF #758 (settlement with CSS).

## ARGUMENT

### I.    Standard of Review

The decisions in *Bell Atl. Corp, v. Twombly*, 127 S.Ct. 1955 (2007) and its progeny have clarified that to survive a motion to dismiss, a complaint must contain factual allegations "to raise a right to relief above a speculative level on the assumption that all the allegations in the complaint are true." *Id*. at 1964-65; *see also Davis v. Coca-Cola Bottling Co. Consol*., 516 F.3d 955, 974 n.43 (11th Cir. 2008).

Complaints that rely on "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are not enough and cannot survive a motion to dismiss. *Twombly*, 127 S.Ct. at 1965.  Thus, this Court must not accept as true legal conclusions masquerading as factual allegations.  *See Gunn v. Title Max of Alabama, Inc.* (*In re Gunn*), 2008 WL 4216546 at *1 (11th Cir. September 16, 2008).

Also, although the analysis of a motion to dismiss is limited primarily to the face of the complaint and attachments thereto, there are instances where the court may consider documents outside of the four-corners of the complaint without converting the motion into one for summary judgment.  For example, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, the court may consider the documents as part of the pleadings without converting the motion into a Rule 56 motion. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997) (*citing Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

A court may also take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 Fed. Appx. 52, 53-54 (11th Cir. 2006) (holding that district court could take judicial notice of filing in

a separate lawsuit without turning motion to dismiss into one for summary judgment).  Thus, this Court can and should take judicial notice of earlier filings in this bankruptcy proceeding, including all of the related adversaries, as well as the recent arbitration demand filed by the Trustee against DSI.  *See* Arbitration Demand, Exhibit B.

We submit that the Third Amended Complaint is barred by the contractual limitations provision in the Agreement, and the Court should dismiss the Third Amended Complaint as against DSI.

## II. Because the Trustee Has Waived the Right to Arbitrate, the Stay Should be Lifted, and the Action Dismissed

Now, almost 14 years after its claimed cause of action against DSI accrued, and ten years after the Court entered an order allowing the Trustee to pursue arbitration, the Trustee has belatedly taken steps to attempt to initiate an arbitration proceeding.  *See* Arbitration Demand, Exhibit B. DSI strongly believes the Trustee has waived the right to arbitrate, and asks the Court to lift the stay of proceedings, and dismiss this action with prejudice.

The Trustee invoked the jurisdiction of the Court in 2009 by filing a Complaint against DSI.  The Trustee's First Complaint, ECF #1.  In 2010, the Court stayed the proceedings against DSI, allowing the Trustee to initiate arbitration.  ECF #287.  The Trustee did not do so.  Rather, he continued to litigate against DSI.

On July 28, 2010, after the stay order had been entered, the Trustee filed a Second Amended Complaint against DSI.  ECF #302.  Such filing was inconsistent with the Stay Order. Significantly, this pleading contained multiple new allegations against DSI.  For example, paragraphs 183 to 193 contain allegations specific to DSI that were not a part of the prior complaints.  *Id.* ¶¶ 183-193.

But even then, the Trustee chose not to pursue arbitration.  Rather, on February 22, 2013, almost three years later, he filed a Third Amended Complaint against DSI.  ECF #542.  Then for another seven years, the Trustee declined pursuing arbitration in favor of allowing his claims to pend in this Court.  By August 2015, all defendants in this action had been dismissed on the merits (*e.g.* order dismissing Defendant Oracle, ECF #521), or had settled and been dismissed.  Then, for the next almost five years, the Trustee took no action to initiate arbitration, even though DSI was the sole remaining defendant.

The entry of a stay order is authorized by the Federal Arbitration Act:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending … shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, **providing the applicant for the stay is not in default in proceeding with such arbitration**.

9 U.S.C. § 3 (emphasis added).

In *Johnson v. Retirement Plan of General Mills, Inc.*, No. 416CV00151TWPDML, 2018 WL 3630275 (S.D. Ind. July 31, 2018), the court stayed the litigation pursuant to Section 3 of the FAA to allow arbitration.  But the party failed to pay the AAA fees and initiate the arbitration proceeding.  On the motion of the other party, the court lifted the stay, stating:

> …the eleven-month delay in initiating arbitration falls squarely within § 3 as a default in proceeding with arbitration. The Plan's inaction has prejudiced Johnson in delaying a resolution of this case on the merits.

*Id.* at *3.

In our case, the ten-year delay in initiating arbitration likewise falls within Section 3 as a "default" justifying lifting the stay.

A waiver of the right to arbitrate constitutes a default under Section 3 of the FAA:

> The term "default" has been construed as analogous in meaning to
> the common-law term "waiver".

3 Fed. Proc., L. Ed. § 4:34 (2019).

In *Morewitz v. West England Ship Owners Mutual Protection and Indemnity Association*

*(Luxembourg)*, 62 F.3d 1356 (11th Cir. 1995), the Court considered waiver and default issues

under Section 3 of the FAA:

> … the doctrine of waiver is not an empty shell. Waiver occurs when
> a party seeking arbitration substantially participates in litigation to a
> point inconsistent with an intent to arbitrate and this participation
> results in prejudice to the opposing party. *Price v. Drexel Burnham
> Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986). Prejudice has
> been found in situations where the party seeking arbitration allows
> the opposing party to undergo the types of litigation expenses that
> arbitration was designed to alleviate. *E.C. Ernst, Inc. v. Manhattan
> Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977), cert. denied, 434 U.S.
> 1067, 98 S.Ct. 1246-55 L.Ed.2d 769 (1978).

*Id.* at 1366.

The court also noted:

> Although the Arbitration Act uses the term "default," 9 U.S.C. § 3,
> the case law on this subject employs the term "waiver." See
> generally 3 Fed.Proc., L.Ed. Arbitration § 4:24 (1981) ("the term
> 'default' has been construed as analogous in meaning to the
> common-law term 'waiver'").

*Id.* at 1365, n.16.

Apparently, the Trustee now realizes that his claims against DSI are barred by the

contractual time limit for asserting a claim, and he therefore seeks arbitration. *See* Exhibit A, at

Article XI(1) (contractually-agreed one-year limitation on claims). This Court considered similar

contractual time limitations when Oracle sought and the Court granted a dismissal with prejudice

of the claims against Oracle. *See* Memorandum Opinion on Defendants' Motion to Dismiss, ECF

#521. The Court dismissed the claims against Oracle based on a contractual time limitation on initiating an action.

A similar situation arose in *Raeis Constructors, LLC v. Circle K Stores, Inc.*, No. 5:18-CV-240-FL, 2019 WL 6826356 (E.D.N.C. Dec. 13, 2019), albeit between the parties to the agreement in question. The Court's observation is helpful:

> It is thus a strong basis for default where, after proceeding with litigation it commenced, a plaintiff seeks to compel arbitration of its own claims. Indeed, "prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." *MicroStrategy, Inc.*, 268 F.3d at 250 (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997)). In this context, "prejudice … refers to the inherent unfairness – in terms of delay, expense, or damage to a party's legal position – that occurs when the party's opponent forces it to litigate an issue and late seeks to arbitrate that same issue." *Doctor's Assocs., Inc.*, 107 F.3d at 134; *see, e.g.*, *Mozingo v. S. Fin. Grp., Inc.*, 520 F.Supp.2d 725, 733 (D.S.C. 2007) (holding plaintiff waived right to arbitrate after defendants filed a motion to dismiss plaintiff's claims).

*Id.* at *8.

When a party substantially invokes the litigation machinery, and acts inconsistently with arbitration, it waives any right to arbitration. The Eleventh Circuit Court of Appeals has addressed the issue of waiver of the right to arbitrate in its decisions. For example, in *S & H Contractors, Inc. v. A.J. Taft Coal Company, Inc.*, 906 F.2d 1507 (11th Cir. 1990), the Court said:

> … a party that "[s]ubstantially invok[es] the litigation machinery" prior to demanding arbitration may waive its right to arbitrate. *Id.* A party has waived its right to arbitrate if, "under the totality of the circumstances, the … party has acted inconsistently with the arbitration right," *National Found. for Cancer Research v. A.G. Edwards & Sons*, 821 F.2d 772, 774 (D.C. Cir. 1987), and, in so acting, has in some way prejudiced the other party, *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986). When determining whether the other party has been prejudiced, we may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process. *See Frye v. Paine, Webber, Jackson & Curtis, Inc.*, 877

F.2d 396, 399 (5th Cir. 1989), *cert. denied*, 494 U.S. 1016, 110 S. Ct. 1318, 108 L.Ed. 493 (1990).

*Id.* at 1514.

In that case, the delay in requesting arbitration was only eight months, as compared to ten years in our case. In the eight-month period, two motions were filed, and 430 pages of depositions were taken. The Court then ruled:

> We conclude from these facts that, as a matter of law, Taft was prejudiced by S & H's delay in demanding arbitration and by its invocation of the litigation process.

*Id.*

In our case, the parties filed motions and briefs concerning arbitration and a stay order was entered. Additionally, three amended complaints against DSI were filed by the Trustee. Clearly, the Trustee has substantially invoked the litigation machinery.

In a later decision, *Garcia v. Wachovia Corporation*, 699 F.3d 1273 (11th Cir. 2012), the Court of Appeals reiterated its ruling in *S & H Contractors*, and held that a delay of more than a year together with discovery actions constituted an invocation of the litigation machinery, and thus a waiver of the right to arbitration. *Id.* at 1277-78.

These issues were also reviewed in *Krinsk v. Suntrust Banks, Inc.*, 654 F.3d 1194 (11th Cir. 2011). The Court again expressed the rule:

> The invocation of the judicial process ordinarily establishes a waiver of the defendant's right to compel arbitration—i.e., such conduct shows, in the normal case, that the defendant intends to elect a judicial form rather than an arbitral tribunal. *See Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1955) ("[I]nvoking judicial process is presumptive waiver." (emphasis omitted)); *see also Iowa Grain Co. v. Brown*, 171 F.3d 504, 509 (7th Cir. 1999) (discussing Cabinetree).

*Id.* at 1203.

The Court enumerated the two-part test:

> To determine whether a party has waived its contractual right to arbitrate, courts apply a two-part test: "First, [they] decide if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right,' and, second [they] look to see whether, by doing so, that party 'has in some way prejudiced the other party.'" *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002) (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)).

*Id.* at 1200.

The question of whether a party has been prejudiced is determined by the length of delay and expense incurred:

> In determining whether the party opposing arbitration has been prejudiced, courts "consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *S & H Contractors,* 906 F.3d at 1514.

*Id.* at 1201.

In *Pre-Paid Legal Services, Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015), the Tenth Circuit ruled that the stay to allow arbitration would be lifted when the party failed to pay the arbitration fees and the proceeding was terminated.  The Court held that "[f]ailure to pay arbitration fees constitutes a 'default' under § 3 [of the Federal Arbitration Act]."  *Id.* at 1294.

The District Court of Appeals of Florida considered a contract which required that a demand for arbitration must be made within "a reasonable time."  *Bickerstaff v. Frazier*, 232 So. 2d 190, 191 (Fla. Dist. Ct. App. 1970).  The request for arbitration was made four months after the cause of action arose, and two months after litigation was commenced.  The trial court ruled that the demand was not made within a reasonable time, and the appellate court affirmed the decision.  *Id.*

The court made a similar ruling in *Lyons v. Krathen*, 368 S.2d 906, 908 (Fla. Dist. Ct. App. 1979):

> Although paragraph 7.10.2 provides that the demand for arbitration shall be filed within a reasonable time, we find no abuse of discretion on the part of the trial judge in determining that a motion to compel arbitration filed more than nine months after the first written notice of a dispute and four months after the decision of the architects has not been filed within a reasonable time.

And in *Hardin International, Inc. v. Firepak, Inc.*, 567 S.2d 1019, 1020-21 (Fla. Dist. Ct. App. 1990), the Court determined that both parties waived their right to arbitrate when they delayed for three years while the litigation was pending.

Another instructive decision is *Allstate Insurance Company v. Gonzalez*, 38 Cal. App. 4th 783, 790, 45 Cal. Rptr. 2d 491 (1995), in which the Court ruled that a delay of nearly three years in demanding arbitration was an unreasonable delay, and that the party had waived the right to arbitrate.

In our case, the Trustee has acted inconsistently with arbitration.  During the 10 years following entry of the Stay Order allowing the Trustee to initiate arbitration, he did not take any action to commence an arbitration proceeding, a procedure which is designed to hopefully reach a speedy resolution of claims.  Instead, it continued with its litigation strategy, even amending and enlarging its claims against DSI by filing two amended complaints during a several-year period of time.

In considering whether the Trustee has waived his right to arbitration, the Court may consider the unreasonable delay in pursuing arbitration.  As illustrated above, other courts have considered delays of time periods much less than ten years as unreasonable.  *See, e.g.*, *Lyons,* 368 S.2d at 906 (nine months unreasonable); *Johnson*, 2018 WL 3630275, at *3 (eleven months unreasonable); *Gonzalez*, 38 Cal. App. 4th at 790 (three years unreasonable).

DSI has certainly been prejudiced by the delay.  It has been a party to this litigation for more than ten years, incurring attorney fee expenses.  Clearly the work involved in locating witnesses and presenting them would be more difficult after 14 years have elapsed from the time of the events.  All of this would have been prevented had the Trustee pursued arbitration ten years ago when the Court allowed it to do so.

The claims of the Trustee are barred by the contractual time limitation for filing claims set forth in the agreement of the parties.  The Trustee has waived his right to arbitrate by his continued litigation strategy and actions.  We urge the Court to lift the stay, and dismiss this action with prejudice.  The parties, and certainly DSI, should not be required to incur the expense and work involved in an arbitration of time-barred claims.

### III.    The Limitations Clause in the Parties' Agreement Bars the Trustee's Claims, As Established by the Law of the Case

Each of the Trustee's claims against DSI derives from the Agreement between the parties and the work done by DSI for AASI under the Agreement.  *See* Third Amended Complaint, ECF #542, Counts V, X, XVI, XXI, XXVI, XXVIII, XXIX.

Under that Agreement, AASI was required to bring all actions within one year after AASI knew or should have known of the alleged breach by DSI.  Exhibit A, at Article XI(1).

In its Third Amended Complaint, the Trustee admits in numerous respects that that it immediately felt the effects of the failed ERP System as of the February 7, 2006 "go live" date. For example, the Trustee alleges that DSI and the other defendants improperly allowed the ERP System to "go live" on February 7, 2006, resulting in "devastating effects" that AASI "felt immediately."  Third Amended Complaint, ECF #542, ¶ 84.

Thus, AASI would had to have brought its action against DSI at least by February 2007, and yet it did not do so.  AASI did file its Chapter 11 bankruptcy on April 25, 2007, and that would

have acted to toll any statutes of limitations that had not yet run.  However, because the contractual limitations period ran at the latest in early February 2007, more than two months prior to the bankruptcy filing, the limitations period could not be extended and the claims were barred.

In any event, the Court need not make any assumptions or new findings on issues relating to this contractual limitation provision, because it has already determined that this defense bars similar claims in this proceeding.  In 2013, the Court found that a similar limitations provision in a contract between AASI and Defendant Oracle USA, Inc. barred all of the Trustee's claims against that entity.  Memorandum Opinion on Defendants' Motion to Dismiss, ECF #521.

Initially, the Court found that the "clear and explicit" language of the License Agreement between AASI and Oracle contained a one year statute of limitation period.  *Id.* at p. 9.  As established, the Agreement between DSI and AASI contains a similar provision.

The Court then found that the AASI-Oracle one year contractual limitations provision was enforceable under California law. *Id.* at p. 10.  In this case, the Agreement is governed by Delaware law.  However, just as in California, Delaware law recognizes that parties to a contract may agree to a shorter statute of limitations. That choice is respected especially when both are large, sophisticated entities. While a shortened period must be reasonable, Delaware courts recognize "there are sound business reasons for such clauses, and [its] case law has long upheld such clauses as a proper exercise of the freedom of contract." *ENI Holdings, LLC v. KBR Group Holdings, LLC*, 2013 WL 6186326 (Del. Ch. Nov. 27, 2013).  By way of example, the Court of Chancery enforced a provision shortening the statute of limitations for breach of contract claims to one year. *GRT, Inc. v. Marathon GTF Tech., Ltd*, 2011 WL 2682898 (Del. Ch. July 11, 2011). There is no doubt a Delaware court would enforce the negotiated one-year limitation period in AASI and DSI's contract.

The Court then found that by the Trustee's own allegations, "the causes of action against Oracle accrued no later than, and probably before, the 'Go-Live Date [of February 7, 2006]." ECF #521, at pp. 10-11. As applied here, the Trustee's allegations concerning AASI's knowledge of the ERP System's failures also extend to DSI. The Court concluded that the Trustee failed to bring claims against Oracle prior to February of 2007, and so were barred by the contractual limitations provision. *Id.* at p. 11.

These findings not only *advise* barring the Trustee's claims—they *require* it. The law of the case doctrine dictates that, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case ... This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *In re Gurley*, 357 B.R. 868, 878–79 (Bankr. M.D. Fla. 2006).

Also, although not needed given the Court's prior findings on when the alleged claims accrued per the Trustee's admissions in this adversary proceeding, it is noted that the Trustee alleged in pleadings in other adversary proceedings within this bankruptcy that the failure of the ERP system occurred at or around the time of the February 7, 2006 "Go Live Date."

For example, in paragraph 118 of the September 30, 2009 Amended Complaint against former officers and directors of AASI, the Trustee stated that, "After going live, the Board continued to receive frequent updates on the status of the ERP System failed implementation, including its immediate negative effect on the company's financial health, inventory, customer and vendor relations and company morale."[5] *See* Amended Complaint in Adversary Case No. 09-01465-LMI, attached hereto as **Exhibit C**, at ¶ 118 (hereafter "*Goldberg* Complaint").

---

[5] The Court may take judicial notice of statements made in filings in other cases. *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (unpublished) (district court properly took judicial notice of pleadings and orders filed in the plaintiff's first case); *Nagim v. Irving*, No. 10–cv–01925, 2010 WL 4810815, at *3 (D. Colo. Oct. 19, 2010) (taking judicial notice of pleadings filed by plaintiff in other cases). A court may consider matters properly subject to judicial

Also, in paragraph 122 of the *Goldberg* Complaint, the Trustee stated that "As early as March, 2006, Flanders made the Board aware that the ERP System's failed implementation had such a severe negative impact that they would need to seek an amendment to All American's credit facility just to avoid being in default." *Id.* ¶ 122.

These statements regarding the culpability of the former AASI officers and directors directly contradict their allegations against DSI in the Third Amended Complaint. Clearly, the Trustee has stressed that February 2006 was the immediate tipping point, both for the ERP system and for AASI as a whole, and that this event was obvious to every party involved. The Trustee cannot now argue that AASI was ignorant of the wrongful act or injury at that time.

In sum, under the law of the case, the Court has already determined that (1) AASI knew about the ERP System's failures as of February 2006, (2) AASI failed to bring its claims within a year of that period, and accordingly (3) AASI's claims are barred under any enforceable one-year contractual limitations period. Because Delaware joins California in readily enforcing such limitations periods, AASI's claims against DSI should be barred as untimely.

Thus, under the law of the case doctrine, and as a result of the various admissions by the Trustee, this Court should dismiss with prejudice all counts against DSI as barred by the contractual limitation provision in the Agreement.

**IV.    The Trustee's Claims Are Otherwise Barred or Limited.**

DSI is not currently seeking dismissal on grounds other than the one-year limitations provision in the Agreement between the parties. However, DSI believes it is important for the Court to be aware that there are several other reasons why the Trustee's claims against DSI are barred or limited.

---

notice in applying the *Twombly* standard. *See, e.g., Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1096 (9th Cir. 2008).

## A. The Trustee's Claims are Limited to Breach of Contract

The Trustee asserts that DSI not only breached the contract in existence between the parties, but that it negligently failed to warn AASI, otherwise committed acts of gross negligence, and is strictly liable to plaintiff.  However, any Claim made by the Trustee is limited to breach of contract under the economic loss doctrine.

As stated, the rights of the parties are determined by the Agreement made on October 29, 2004.  *See* Exhibit A.  Under Article XI(2) of the Agreement, all disputes are determined under the law of the State of Delaware.  *Id.* at Article XI(2).

Under Delaware law, a party's action for damages in a contract dispute is limited to a claim for breach of contract. Under the economic loss rule, claims based on negligence and other similar theories are not allowed. Delaware courts have adopted a strong form of the economic loss rule— they prohibit "tortious breach of contract" theories in both product liability and non-products contexts. Instead, a party claiming breach of a duty or obligation within a contract is limited to contractual claims as its exclusive remedy. As a Delaware court explained,

> This rule is a judicially created doctrine "which prohibits a party from recovering in tort for economic losses, the entitlement to which flows only from [a] contract." The rule requires a plaintiff to sue in contract and not in tort "where an action is based entirely on a breach of the terms of a contract between the parties and not on a violation of an independent duty imposed by law." "While initially a doctrine related to product liability actions, the courts have expanded the doctrine's application beyond its original scope to any kind of dispute arising from a commercial transaction where the alleged damages do no harm to a person or to property other than the bargained for item." "The driving principle for the rule is the notion that contract law provides a better and more specific remedy than tort law." The rule "supports the ability of persons to allocate the risks of business transactions." There are exceptions to the economic loss rule, however; they include "[c]laims of fraud, as well as other intentional torts."

*Israel Discount Bank of New York v. First State Depository Co., LLC*, 2012 WL 4459802 (Del. Ch. Sept. 27, 2012) (internal citations omitted).[6]

Moreover, this identical issue has already been decided by the Court in ruling on another motion to dismiss in this adversary proceeding. The Court dismissed all negligence, gross negligence, strict liability, and misrepresentation claims (the "tort claims") against certain other defendants based on the economic loss rule. Memorandum Opinion on Defendants' Motions to Dismiss, dated January 24, 2013, ECF #521, at pp. 11-17. While we believe all claims against DSI should and will be dismissed because of untimely filing, all alleged tort claims are also subject to dismissal under the economic loss doctrine.[7]

## B. The Trustee's Claims Are Limited by Contract to the Amount of Fees AASI Paid to DSI

The Third Amended Complaint claims several categories of extra-contractual damages, such as compensatory, special, and punitive damages. *See, e.g.*, Third Amended Complaint, ECF #542, at ¶ 315. However, under Delaware law, and Article VIII of the Agreement, any claim is limited to an alleged breach of contract, with an absolute maximum recovery limited to the fees that AASI paid to DSI (approximately $1.013 million). *See* Third Amended Complaint, ECF #542, Exhibit G (listing $1,013,410.76 in fees paid to DSI).

---

[6] The Trustee does not allege DSI violated an "independent duty"; indeed, the parties' only relationship was contractual. Delaware courts have explicitly prohibited the recovery of tort remedies that arise from allegations that a party negligently performed contractual obligations. *See J.W. Walker & Sons, Inc. v. Constr. Mgmt. Serv., Inc.*, 2008 WL 1891385, at *1 (Del. Super. Feb. 28, 2008) ("The Court will not extend tort law into areas adequately addressed by contract law."). Delaware law is clear that AASI can only assert a breach of contract claim against DSI.
[7] The Court has already rejected what might be expected to be an argument by the Trustee that the economic loss rule does not bar recovery because the defective product, the ERP System, caused damage to other property, AASI's goodwill. Memorandum Opinion on Defendants' Motions to Dismiss, dated January 24, 2013, ECF #521, at pp. 12-15) ("I find that the Seventh Circuit interpretation is consistent with Florida law. The damage to AASI's goodwill and the destruction of its reputation does not constitute damage to 'other property' for purposes of eliminating applicability of the contractual economic loss doctrine, . .").

Specifically, under Article VIII of the Agreement, the parties agreed to a mutual limitation of liability. The Agreement reflects that DSI's maximum liability under the Agreement is the amount of fees paid by AASI for the relevant products and/or services giving rise to the liability. Exhibit A, at Article VIII. Thus, even assuming arguendo the Trustee is able to establish that all products and services provided by DSI under the Agreement failed and gave rise to liability, any claim would be limited to a maximum of approximately $1.013 million in fees paid by AASI to DSI.

Also under the Agreement, neither party can be held liable for indirect or consequential damages, including damages for loss of good will, profits, or business interruption, whether such claim is labeled tort or contract. The Agreement between the parties expressly reflects this understanding. *Id.*

Delaware courts' penchant to enforce contracts as written applies equally to limitation of liability provisions. In a recent case, the Delaware court upheld a provision similar to the one at issue here—it limited liability to amounts paid. *RHA Constr., Inc. v. Scott Eng'g, Inc.*, 2013 WL 3884937 (Del. Super. July 24, 2013). And it does not matter whether the alleged negligence is ordinary or gross negligence.[8] The provision in DSI and AASI's Agreement is equally clear. It both limits liability to amounts paid and specifically disclaims the right to other forms of damages—including those arising in tort. The Trustee thus will not be permitted to make a claim for any amount greater than the $1 million it paid to DSI.

---

[8] *Rob-Win, Inc. v. Lydia Sec. Monitoring, Inc.*, 2007 WL 3360036 (Del. Super. Apr. 30, 2007) ("Simply reading this clause leads to the conclusion that the limitation of liability pertains to all claims, including gross negligence.").

**C.  The Trustee's Claims are Barred by the Doctrine of Judicial Estoppel**

The Trustee's claims of wrongdoing by DSI are directly contradicted by his representations to the Court, and so should be barred by the doctrine of judicial estoppel.

On September 30, 2009, the Trustee brought a separate adversary proceeding against many of the Debtors' former officers or directors, blaming them for the failure of the ERP System.  *See* Exhibit C, *Goldberg* Complaint.  This is the exact opposite of what the Trustee contends in his Third Amended Complaint against DSI and the other vendors involved with the ERP system, and notably, the lawyers for AASI in both actions were the same, although AASI apparently recently retained new counsel in this matter.

Specifically in the *Goldberg* Complaint, the Trustee alleged that AASI's former Chief Information Officer Gary Kirk "demonstrated greater loyalty to CSS than [the Debtor], at times focusing frustration upon members of Management and siding with CSS when CSS was clearly failing in its job to install and integrate the ERP System." Exhibit C, ¶ 98.

The Trustee also claimed in the *Goldberg* Complaint that the Debtor's management failed to follow the advice of the consultant defendants that the Trustee has sued in this action to "properly learn to utilize the ERP System and new software." *Id*. ¶ 102.  The Trustee concluded that this "failure to properly train was systemic and included failures in all departments and operational functions of [the Debtor], including shipping, sales, marketing, operations, inventory, and finance." *Id*.

According to the Trustee, this failure to follow the consultants' advice turned out to be fatal: "Certain of Management . . . were constantly insistent that the ERP System 'go live' by a date certain regardless of whether the ERP System was ready for implementation. They were aware at the time of the problems with the ERP System and were informed by at least certain of the

consultants that the implementation would not be successful and certain elements were non-operational." *Id.* ¶ 106.  "Despite all indications not to 'go live', on or about Feb. 7, 2006, each of the then employed Management authorized or acquiesced to implementing the ERP System and 'go live'." *Id.* ¶ 111.

Also, in another pleading in *Goldberg*, this time its Response to a Motion to Dismiss filed by the defendants, the Trustee referred to the actions of the former directors and officers as "egregious", and placed blame for the failure of the company and bankruptcy on the former officers and directors.  The Trustee stated that "the Management Defendant's actions regarding the computer system implementation and their management of the post-implementation period are what drove All American into insolvency." *See* Plaintiff's Response in Opposition to Defendants' Dismissal Motions (D.E. 118, 123, 135, 138, 140, 153) and Memorandum in Support Thereof, Adversary Case No. 09-01465-LMI, ECF #155, attached hereto as **Exhibit D**, at pp. 3-4.

The Trustee further stated in this Response that "[t]he Management Defendants also breached their duty of loyalty by failing to act in good faith when they consciously disregarded their duties by intentionally ignoring the advice and warnings of experts and consultants that implementation of the ERP System in February, 2006, would be not only premature but could result in a catastrophic company-wide failure."  Exhibit D, ¶ 44.)

These statements regarding the culpability of the former AASI officers and directors directly contradict the Trustee's allegations against DSI in the Third Amended Complaint.  When a party does so, the doctrine of judicial estoppel allows a court to exercise its discretion to dismiss the party's claims.  *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808 (2001).

As a result, the Trustee should be barred from asserting the claims in the Third Amended Complaint.  *See e.g., Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017)

(judicial estoppel may be applied when the plaintiff "took a position under oath in the [prior] proceeding that was inconsistent with the plaintiff's pursuit of the [present] lawsuit" and she thus "intended to make a mockery of the judicial system").[9]

## V.    Conclusion

Almost ten years after the Stay Order and years after this adversary proceeding has otherwise been fully resolved, the Trustee has made one final attempt to revive its claim against DSI through an arbitration demand.  The Trustee's attempt is not only procedurally deficient—considering it is in "default" under the Federal Arbitration Act—it is substantively deficient in several respects, most notably on limitations grounds that are the law of the case in this proceeding. DSI requests this Court lift the Stay Order on grounds that the Trustee has waived its right to arbitration, and then dismiss the Trustee's claims against DSI based on failure to file within the one year limitations period provided for in the Agreement between the parties.

Respectfully submitted,

By:    */s/ John Lyons* _____
JOHN LYONS
Florida Bar No. 91824

**SHOOK HARDY & BACON, LLP.**
Two Commerce Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Tel: (215) 278-2555
Fax (215) 278-2594
E-Mail: jlyons@shb.com

MARK MOEDRITZER (to seek admission *Pro Hac Vice*)
JORDAN DILLON (to seek admission *Pro Hac Vice*)

---

[9] It is also noteworthy in this regard that AASI ultimately settled the Goldberg adversary proceeding in exchange for payment of $400,000.  *See* Motion to Approve Compromise and Settlement Between Liquidating Trustee and D&O Defendants and Modification of Fee Agreement and Payment Thereunder, Adversary Case No. 07-12963, ECF #2274, attached hereto as **Exhibit E**, at ¶ 20(i).   However, the parties whose conduct AASI had determined to be "egregious" were allowed to retain significant claims against debtors which upon information and belief were or will be paid in full.  *Id.* ¶ 20(vii)).  Also, in exchange for releases given under the Settlement Agreement, AASI procured the cooperation of the officers and directors in connection with the prosecution of other claims.  *Id.* ¶ 27.

**SHOOK HARDY & BACON, LLP.**
2555 Grand Boulevard
Kansas City, MO  64108
Tel:  (816) 474-6550
Fax: (816) 421-5547
E-Mail: mmoedritzer@shb.com
E-Mail: jdillon@shb.com

ANTAR VAUGHAN (Florida Bar No. 497754)
**SHOOK HARDY & BACON, LLP.**
Citigroup Center, Suite 3200
201 South Biscayne Blvd.
Miami, Florida 33131-4332
Tel: (305) 358-5171
Fax (305) 358-7470
E-Mail: avaughan@shb.com

*Attorneys for Data Systems, International, Inc.*

## CERTIFICATE OF ADMISSION

I HEREBY CERTIFY that I am a member of the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this court as set forth in Local Rule 2090-1(A).

I FURTHER CERTIFY that, in accordance with Local Rule 9011-4(A)(2)(b), attorneys Mark Moedritzer, Jordan Dillon, and Antar Vaughan intend to seek admission to appear pro hac vice in this matter.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of February, 2020, a true and correct copy of the foregoing was filed and sent via electronic filing using the CM/ECF system with the Clerk of the Court, which sent e-mail notification of such filing to all CM/ECF participants in this case, and via regular US mail and/or e-mail to the following counsel for the Trustee:

MARSHALL GRANT, PLLC
c/o Thomas G. Zeichman
197 South Federal Highway, Suite 200
Boca Raton, FL 33432


By: */s/ John Lyons*_____
        JOHN LYONS
        Florida Bar No. 91824