*TAGGED OPINION*



**ORDERED in the Southern District of Florida on October 30, 2020.**

**Laurel M. Isicoff
Chief United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In Re:

ALL AMERICAN SEMICONDUCTOR, INC., *et al.*,

    Debtor,
_____/

Chapter 11
(Jointly Administered)
Case No. 07-12963-BKC-LMI

AASI Creditor Liquidating Trust, by and Through Kenneth A. Welt, Liquidating Trustee, Pursuant to the confirmed Third Amended Plan of Liquidation of The Official Committee of Unsecured Creditors,

    Plaintiff,

vs.

Data Systems International, Inc.,

    Defendant.
_____/

Adv. Case No. 09-01466-BKC-LMI

## MEMORANDUM OPINION GRANTING MOTION TO DISMISS THE THIRD AMENDED COMPLAINT AGAINST DATA SYSTEMS INTERNATIONAL

This matter came before the Court for hearing on June 29, 2020 (the "Hearing"), on the *Motion to Dismiss the Third Amended Complaint Against Data Systems International* (ECF #779) (the "Motion to Dismiss") filed by Data Systems International, Inc. ("DSI" or "Defendant"). The Court has reviewed the Motion to Dismiss, as well as the Response[1] and the Reply[2]. For the reasons set forth below, the Motion to Dismiss is GRANTED, and the Third Amended Complaint (ECF #542) (the "Third Amended Complaint") is DISMISSED WITH PREJUDICE.[3]

### PROCEDURAL HISTORY[4]

The Plaintiff, the AASI Creditors Liquidating Trust by and through its Liquidating Trustee ("Plaintiff"), initiated this adversary proceeding on April 24, 2009, with its first Complaint, as amended, against DSI and 16 other defendants (ECF #2) (the "First Amended Complaint"). On June 29, 2009, in response to the First Amended Complaint, DSI filed a *Motion to Dismiss Amended Complaint or for Abstention* (ECF #143). The Court abated and stayed this adversary proceeding as to DSI on July 21, 2010 (ECF #287), pursuant to an agreement between the parties and allowed the Plaintiff to seek arbitration with respect to

---

[1] *Response In Opposition To: DSI's Dismiss Third Amended Complaint Against Data Systems International* (ECF #783) (the "Response").
[2] *Reply In Support Of Motion To Dismiss Third Amended Complaint Against Data Systems International* (ECF #784) (the "Reply").
[3] The parties agreed at oral argument that the operative complaint is the Third Amended Complaint.
[4] The following constitute this Court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52 made applicable to this adversary proceeding by virtue of Fed. R. Bankr. P. 7052.

2

the dispute with DSI, as contemplated by the operative agreement between All American Semiconductor Inc. ("AASI") and DSI.[5]

The Plaintiff filed its *Second Amended Complaint* (ECF #302) (the "Second Amended Complaint") on July 28, 2010. Certain defendants, including Oracle USA, Inc. (f/k/a PeopleSoft USA, Inc.) ("Oracle"), filed motions to dismiss the Second Amended Complaint.[6] The Court previously granted in part and denied in part those motions to dismiss in its *Memorandum Opinion on Defendants' Motion to Dismiss* (ECF #521) (the "Oracle Opinion").

The Plaintiff then filed its *Third Amended Complaint* (ECF #542) on February 22, 2013.[7] Nearly seven years later, having taken no action in the adversary proceeding with respect to DSI, the Plaintiff filed an Arbitration Demand against DSI before the American Arbitration Association. DSI then filed a *Motion To Lift Stay And To Dismiss Third Amended Complaint Against Data Systems International* (ECF #759) (the "Lift Stay Motion") on the grounds that the Plaintiff had waived the right to arbitrate and the Plaintiff's claims were time-barred based on contractual limitations. The Court granted the Lift Stay Motion, ruling that the Plaintiff had waived its right to arbitrate, and directed this

---

[5] The Court also entered its *Memorandum Opinion On Orders Granting In Part And Denying In Part Motions To Dismiss Or Abstain Filed By Various Defendants* (ECF #280).
[6] *Motion of CSS, Inc. To Dismiss Counts XXI, XXV, XLVII And LIV of Plaintiff's Second Amended Complaint Pursuant To Fed.R.Civ. P. 12(b)(6) and/or Fed.R.Civ. P. 9(b)* (ECF #363 and *Supplement* at ECF #463)); *Defendant Global Group Technologies, Inc.'s Motion To Dismiss The Second Amended Complaint* (ECF #364); *Defendant Oracle USA Inc.'s Motion To Dismiss Second Amended Complaint For Failure To State A Cause Of Action And Supporting Memorandum Of Law* (ECF #464).
[7] The Plaintiff has since settled with, or dismissed from the Third Amended Complaint, all of the other defendants except DSI.

3

adversary proceeding to go forward.[8] The Court denied the motion to dismiss without prejudice, and directed DSI, should it wish to proceed with such relief, to file another motion to dismiss to address certain open issues, and include other arguments for dismissal that DSI raised at the oral argument on the Lift Stay Motion.[9]

## FACTUAL ALLEGATIONS AGAINST DSI

The Plaintiff sued DSI for its part in the alleged negligent design, installation, and implementation of an inventory management system, referred to as an Enterprise Resource Planning System (the "ERP System"), the failure of which, according to the Plaintiff, caused the financial collapse of AASI and its various subsidiaries and affiliates. The Third Amended Complaint alleges that the ERP System, after a two-year delay, and running over budget, went live on or about February 7, 2006 (the "Go Live Date"), even though the system was not working properly, which resulted in "devastating effects" that AASI "felt immediately," and paralyzed AASI's business. AASI allegedly was never able to properly function again, and revenues decreased substantially, all of which lead to the demise of AASI's business.

AASI entered into a Software License, Services, and Maintenance Agreement (the "Agreement") with DSI in October of 2004. DSI provided technology intended for utilization in the ERP System. The Plaintiff alleges that

---

[8] *Order Granting In Part And Denying In Part Motion To Lift Stay And To Dismiss Third Amended Complaint Against Data Systems International* (ECF #773).
[9] *Order On Motion To Lift Stay And To Dismiss Third Amended Complaint Against Data Systems International* (ECF #775).

DSI's technology was intended to facilitate appropriate warehousing and shipping of products, as well as management of product supply and demand, all of which were components of the ERP System.

The Third Amended Complaint alleges that the software DSI provided was not integrated properly within the ERP System and the services provided by DSI did not adequately address the needs of AASI. Plaintiff asserts that DSI recklessly and with a gross lack of care, facilitated AASI's ERP System going live on February 7, 2006, without first conducting adequate testing of its components or training, and without ensuring an adequate backup or parallel system was in place should the system fail. The Third Amended Complaint alleges that DSI's dcLink module of the ERP System consequently rendered AASI's existing system's mechanism for inventory and shipping (the "Existing System") inoperable, and further, that rendering the Existing System inoperable was not part of the Agreement between AASI and DSI.

Based on that alleged failure under the Agreement, the Plaintiff brings claims against DSI for Breach of Contract (Count V), Breach of Warranty (Count X), Strict Liability (Count XVI), Negligence (Count XXI), Gross Negligence (Count XXVI), and Avoidance and Recovery of Fraudulent Transfers (Counts XXVIII and XXIX).

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b). As discussed in more detail in the Court's prior opinion dismissing the First Amended Complaint, this adversary proceeding involves

intertwined core and non-core matters.[10] The fraudulent transfer count pursuant to 11 U.S.C. §548 is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(F). The state law claims, which existed prior to and independent of the bankruptcy case are non-core matters, but are related to the bankruptcy case and the fraudulent transfer count pursuant to 28 U.S.C. §157(c)(2)[11].

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007) (internal citations omitted).

To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[10] *Memorandum Opinion on Orders Granting in Part and Denying in Part Motions to Dismiss or Abstain Filed by Various Defendants* (ECF #280) (*In re All American Semiconductor, Inc.*, 2010 WL 2854153 (Bankr. S.D. Fla. 2010)).

[11] On motion of former Defendant CSS, Inc. the District Court entered an order directing that the adversary proceeding shall be withdrawn "after the bankruptcy court has ruled on all dispositive motions and the case is otherwise ready to be submitted to a jury." *Order on Motion to Withdraw the Reference* dated December 8, 2009 (ECF #237).

6

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). "The scope of review on a motion to dismiss under Rule 12(b)(6) is limited to the four corners of the complaint." *Bencomo Enterprises v. United Specialty Ins. Co.*, 345 F. Supp. 3d 1401, 1404 (S.D. Fla. 2018).

Lastly, in evaluating a motion to dismiss under Rule 12(b)(6) on statute of limitations grounds, a court must determine "if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## ANALYSIS

### 1. The Claims Against DSI Are Time Barred

DSI seeks dismissal of all counts against it, on the basis that the claims are time barred. The Agreement states, in relevant part "[n]o action arising out of or related to this Agreement may be brought more than one (1) year after the claiming party knew or should have known." Agreement at Article XI.1.[12] DSI argues that AASI knew or should have known on the Go Live Date that it might have a claim against DSI, and therefore, the time to file a claim against DSI expired prior to the Petition Date. The Plaintiff, in its Response, argues that the

---

[12] A copy of the Agreement is attached to the Complaint and to DSI's Motion to Dismiss.

contractual limitations provision in the Agreement does not bar the claims because the claims did not accrue until later than the Go Live Date, and the Third Amended Complaint was, therefore, timely filed.

### a. Delaware Law Applies

The Agreement is governed by the laws of the State of Delaware.[13] The one-year limitations period in the Agreement is shorter than the applicable Delaware statute of limitations.[14] Florida recognizes, and will enforce, a shortened statute of limitations period if such a period is enforceable under the state law applicable to the dispute. *Burroughs Corp. v. Suntogs of Miami, Inc.*, 472 So. 2d 1166 (Fla. 1985) (A contract with a statute of limitations period void under Florida law, but enforceable under Michigan law, the law applicable to the contract, is enforceable in Florida and does not violate Florida's public policy); *see also Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340-41 (11th Cir. 2005). Therefore, the Court does not need to address whether the one-year contractual limitations provision is enforceable under Florida law, but only whether it is enforceable under Delaware law. Under Delaware law, courts recognize "there are sound business reasons for such clauses, and [Delaware] case law has long upheld such clauses as a proper exercise of the freedom of contract." *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *3 (Del. Ch. July 11, 2011) (enforcing a provision shortening the time limitation for breach of contract claims

---

[13] Agreement at Article XI.2.
[14] The Delaware statute of limitations for breach of contract claims generally is three years "from the accruing of the cause of such action." 10 Del. C. §8106.

to one year). Accordingly, the Court finds that the negotiated one-year limitation period in the Agreement is enforceable.

### b. The Date of the Claims Accrual

The Court previously found, based on the Plaintiff's own allegations, that "the causes of action against Oracle [another defendant in this adversary proceeding] accrued no later than, and probably before, the 'Go-Live Date' [of February 7, 2006]." Oracle Opinion at 10-11. DSI argues that for the same reasons the Court held AASI's claims against Oracle accrued on the Go Live Date, the Court should find the Go Live Date is the date any claims accrued against DSI because the Plaintiff's allegations concerning AASI's knowledge of the ERP System's failures apply equally to DSI.

The Plaintiff argues that the causes of action against DSI did not accrue until several months after the Go Live Date of February 7, 2006. The Plaintiff asserts that because the Agreement required DSI to make repairs as necessary to the project, a clear actionable breach could not occur until DSI failed to complete the repairs or abandoned the project. The Plaintiff also argues that there are non-contractual causes of action that are not subject to the contractual limitations period.

The Agreement contains a repair provision. "For any claim under the warranty in this Article VII, DSI's sole obligation shall be, without additional charge, to correct the substantial nonconformance identified in the Warranty Notice no later than sixty (60) days following the receipt of the Warranty Notice

(the "Resolution Deadline.)"  Agreement at Article VII.3. So the issue is whether this provision creates a new cause of action (*e.g.* "failure to repair").[15]

DSI argues that repair efforts cannot toll accrual of a claim where a plaintiff could allege a prima facie case after a single incident, citing *Ocimum v. AstraZeneca,* 2019 WL 6726836, at *15 (Del. Super. Ct. Dec. 4, 2019) ("If a plaintiff could allege a prima facie case of breach of contract after a single incident, the doctrine does not apply, even if a defendant engages in 'numerous repeated wrongs of similar, if not same, character over an extended period.'"); *Accord In the Matter of Thomas Lawrence Reeves Irrevocable Trust*, 2015 WL 1947360, at *9 (Del. Ch. Apr. 29, 2015) ("It is settled . . . that 'the failure to remedy a wrong does not mean that the wrong is continuing'. . . Although uncorrected wrongs remain wrongful until remedied, they do not fit within the narrow category of acts which are considered continuing wrongs."). Plaintiff attempts to distinguish *Matter of Thomas Lawrence Reeves Irrevocable Trust* on the grounds that, while the Delaware case holds that failure to remedy a wrong does not delay accrual of a cause of action, the Agreement includes the negotiated repair provision. Therefore, Plaintiff argues, the cause of action arising from the breach of the contractual duty to repair did not accrue until it was clear DSI would not, or could not, repair the ERP System failure.

---

[15] In its Response, the Plaintiff raised the continuing breach doctrine as a defense to the one-year contractual limitations argument. However, at the June 29, 2020 hearing on the Motion to Dismiss, the Plaintiff conceded that the doctrine does not apply to contractual limitations provisions like the one at issue here, as contrasted with statutory limitations periods. Thus, the Court need not address whether the continuing breach doctrine would act to toll the one-year contractual limitations period.

The Plaintiff has been unable to point to any case law that supports its argument that the repair provision created an independent contractual duty with a separate claim that only accrued when it was clear the ERP System could not be fixed. Nor does the Third Amended Complaint seek such relief; the word "repair" does not appear in the Third Amended Complaint and the only reference to "correct" in the the Third Amended Complaint is identified as a possible example in a list of examples of why DSI did not peform the Agreement in a "workmanlike manner."[16]

The Third Amended Complaint also fails to adequately plead that the duty to repair tolled the contractual limitations period. Under Delaware law, the accrual of a cause of action can be tolled if the plaintiff establishes that an exception applies. *See Eni Holdings, LLC v. KBR Grp. Holdings, LLC*, 2013 WL 6186326, at *11 (Del. Ch. Nov. 27, 2013). Common exceptions include the doctrines of equitable tolling, fraudulent concealment, and the discovery rule (also known as the doctrine of unknowable injury). *Id.* However, where the parties have negotiated a contractual limitations period, tolling will not apply to a potential claim the existence of which was "knowable or predictable" and therefore, presumed to have been anticipated in the negotiated limitations period. *Id.* at *14 (declining to apply the discovery tolling doctrine to a contractual limitations period "where the inherent unknowability of a potential claim is itself knowable or predictable, and thus the proper source of negotiation and

---

[16] *Third Amended Complaint* (ECF #542) at ¶183.

resolution between the parties to the contract. . . . [P]arties who contract for an abbreviated limitations period must be held to their bargain.").

There is no question that the possible need for repair was contemplated by the Agreement because the Agreement *does* have a contractual repair provision. Had the parties wished to toll the contractual limitations period pending repair of any systems problems, the parties could have addressed tolling in the Agreement. But there is no part of the Agreement, either in Article VII, which includes the repair obligation, or in Article XI, the limitations section, that provides for the tolling of the contractual limitations deadline based on the obligation to repair. Because the Agreement does not include a tolling provision, the repair obligation did not toll accrual of the one-year contractual limitations with respect to the breach of contract claims. And because AASI could have alleged a prima facie case for its contractual claims as of the Go Live Date, the one-year limitations period began, at the latest, on February 7, 2006 and expired on February 7, 2007, before the Petition Date.

The Plaintiff's tort claims, even if they were viable, are also not tolled. Tolling of a tort claim is limited to situations where there has been concealment, fraud, or if the injury is inherently unknowable. *See e.g., Boerger v. Heiman*, 965 A.2d 671, 674 (Del. 2009), citing *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004) (citations omitted) ("Generally, a cause of action arising in tort 'accrues' at the time the tort is committed. . . . Ignorance of the cause of action will not toll the statute [of limitations], absent concealment or fraud, or unless the injury is inherently unknowable and the claimant is blamelessly

12

ignorant of the wrongful act . . . ."). The Plaintiff has not made any such allegations. Because the Third Amended Complaint fails to allege any facts to suggest that any of the Plaintiff's tort claims could be tolled, those claims, therefore, are time barred under the one-year contractual limitation provision.

Based on the foregoing, the Court finds that the causes of action against DSI in the Third Amended Complaint, even if otherwise actionable, accrued no later than February 7, 2006, requiring the filing of any complaint no later than February 7, 2007. Because the limitations period for these claims expired prior to the Petition Date, the claims are time barred and all counts of the Third Amended Complaint seeking relief against DSI are dismissed.

**2. The Agreement and Economic Loss Rule Bar All Counts for Negligence, Gross Negligence, and Strict Liability.**

DSI also seeks dismissal of the counts for negligence, gross negligence, and strict liability (together the "Tort Claims") based upon the terms of the Agreement and the economic loss rule.

**a. Under the Agreement, the Plaintiff's Claims for Damages arising from tort are barred.**

The Third Amended Complaint alleges that DSI not only breached the Agreement, but also committed acts of ordinary and gross negligence, and is strictly liable to Plaintiff. However, AASI and DSI specifically waived any recovery based on such claims.

Article VIII of the Agreement limits the types of damages for which claim can be made:

13

**ARTICLE VIII. LIMITATION OF LIABILITY**

Unless specifically set forth in this Agreement, and except for (i) a breach of Article VI, (ii) any breach of Customer's intellectual property rights, and (iii) the indemnification obligations of DSI under Article IX, DSI's liability for damages under this Agreement shall be limited to the amount of the fees paid by Customer for the relevant Licensed Product(s), Maintenance Services or Training giving rise to the liability. **UNLESS SPECIFICALLY SET FORTH IN THIS AGREEMENT, AND EXCEPT FOR (I) A BREACH OF ARTICLE VI, (II) ANY BREACH OF EITHER PARTY'S INTELLECTUAL PROPERTY RIGHTS, OR (III) THE INDEMNIFICATION OBLIGATIONS OF DSI UNDER ARTICLE IX, IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, SPECIAL, MULTIPLE, EXEMPLARY, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF GOODWILL, PROFITS, DATA, (OR USE THEREOF), OR BUSINESS INTERRUPTION ARISING OUT OF EITHER PARTY'S ACT OR FAILURE TO ACT, WHETHER SUCH DAMAGES ARE LABELED IN TORT, CONTRACT, OR OTHERWISE, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMITATIONS SET FORTH IN THIS SECTION SHALL APPLY EVEN IF ANY EXCLUSIVE REMEDY IN THIS AGREEMENT FAILS OF ITS ESSENTIAL PURPOSE.**

(emphasis in original).

The damage claims in the Third Amended Complaint for negligence (Count XXI) and gross negligence (Count XXVI) seeks recovery for damage to the Existing System and the strict liability claim (Count XVI) seeks recovery for damage to "goodwill, customer relations, and value as a going concern" and are therefore all barred by the Agreement.

### b. Plaintiff's Tort Claims are Barred Under the Economic Loss Doctrine.

The parties agree that Delaware law applies to application of the economic loss doctrine. The economic loss rule is a judicially created doctrine that prohibits recovery in tort where the only damages suffered are economic in nature, as opposed to a claim for personal injury or damage to other property. *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992). The rationale for the rule is to draw a distinction between contract recovery and tort recovery; breach of contract claims are limited to economic damages, while tort claims allow recovery for physical injuries or damages to other property. *Id.* at 1196.[17]

As one Delaware court explained, "the [economic loss] rule requires a plaintiff to sue in contract and not in tort 'where an action is based entirely on a breach of the terms of a contract between the parties and not on a violation of an **independent duty** imposed by law.' . . . The rule 'supports the ability of persons to allocate the risks of business transactions.'" *Israel Discount Bank of New York v. First State Depository Co.*, LLC, 2012 WL 4459802, at *14 (Del. Ch. Sept. 27, 2012) (emphasis added; internal citations omitted); *see also Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. Apr. 15, 2009).[18]

---

[17] A major difference between Florida and Delaware is that Delaware applies the economic loss doctrine in all cases, not just product liability cases. *Compare Tiara Condominium Ass'n, Inc., v. Marsh & McLennan Companies, Inc.,* 110 So. 3d 399, 407 (Fla. 2013) *with Commonwealth Const. Co. v. Endecon, Inc.*, 2009 WL 609426, at *4 (Del. Super. Ct. Mar. 9, 2009) ("Delaware courts have applied the economic loss doctrine outside the realm of defective products to bar claims for negligent management and negligent breach of a service contract.").

[18] *See also Int'l Fid. Ins. Co. v. Mattes Elec., Inc.,* 2002 WL 1400217 (Del. Super. Ct. June 27, 2002) (negligence claim against contract manager of construction project barred by economic loss doctrine); *J.W. Walker & Sons, Inc. v. Constr. Mgmt. Serv. Inc.,* 2008 WL 1891385 (Del. Super. Ct. Feb. 28, 2008) (negligence claim by subcontractor against contractor only alleging economic losses barred by economic loss doctrine).

15

The economic loss rule also prohibits tort recovery when a product damages itself, causing economic loss, but does not cause damage to any property other than itself. *Delmarva Power & Light v. Meter-Treater, Inc.*, 218 F. Supp. 2d 564, 569 (D. Del. 2002) ("purely economic recovery [in tort] cannot occur in the absence of damage to 'other property.'").

To avoid the economic loss doctrine, the Plaintiff had to allege an independent duty imposed by law outside the terms of the Agreement. This the Plaintiff has failed to do. The allegations of the Third Amended Complaint tie all of the claims raised to asserted failures under the Agreement:

> DSI failed to perform its **obligations under its contract** with All American in a reasonable, workmanlike manner in accordance with industry standards. The provision of services that would have met the requirement of "reasonable and workmanlike manner" but were not provided by DSI would have included: adequate testing of its components of the ERP System, including volume testing; proper communication of problems; proper coordination among other ERP System vendors; adequate foresight with respect to the ERP System failure; the ability to prevent, mitigate, manage, and/or correct the failure; and, the **implementation of backup or parallel systems**.

Third Amended Complaint (ECF #542) at ¶183 (emphasis added). The Plaintiff does not allege DSI had a contractual obligation to "implement a backup or parallel system" nor could it, since there is no such obligation in the Agreement. The Third Amended Complaint alleges the failure to provide a backup or parallel system was a failure to perform the Agreement "in a reasonable, workmanlike manner." However the Third Amended Complaint does not allege that such an

obligation, even if there was one, exists independent of DSI's performance of the Agreement.[19]

The Plaintiff claims that the Third Amended Complaint alleges that the defective product, the ERP System, caused damage to other property, that is, the Existing System, and that somehow DSI was responsible to make sure the Existing System would continue to function. However, the Third Amended Complaint does not allege that the ERP System damaged the Existing System, but, rather, that in the list of DSI's "unworkmanlike" services, DSI *failed* to implement a back up or parallel system just in case the ERP System didn't work.

Accordingly Plaintiff's claims for strict liability (XVI), negligence (XXI) and gross negligence (XXVI) fail to allege an independent duty, and are DISMISSED WITH PREJUDICE.

## 3. Plaintiff's Claims Against DSI Are Not Barred by the Doctrine of Judicial Estoppel.

For the reasons stated on the record at the June 29, 2020 hearing on the Motion to Dismiss, the argument that Plaintiff's claims against DSI are barred by the doctrine of judicial estoppel is rejected.

### CONCLUSION

In conclusion, all counts against DSI in the Third Amended Complaint, are DISMISSED WITH PREJUDICE.

###

---

[19] The Court is not suggesting that it is plausible that DSI's obligations under the Agreement included responsibility for the entire Existing System or the ERP System, but the Court does not need to reach that issue in light of its ruling.

Copies furnished to:
John Lyons, Esq.
Thomas Messana, Esq.

*Attorney Lyons is hereby directed to serve a conformed copy of this Order upon receipt to all interested parties and file a Certificate of Service.*